# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In the matter of the Application of | : | |
| LISA MAYER and DEBRA MAYER, | : | Index No. |
| | : | |
| Petitioners, | : | Pursuant to CPLR §§ 5225, |
| | : | 5227 |
| For the payment by, or delivery of property in | : | |
| possession of J.P. MORGAN SECURITIES LLC, | : | |
| UNITED STATES OF AMERICA, AMERINDO | : | |
| TECHNOLOGY GROWTH FUND II INC., and/or | : | |
| AMERINDO MANAGEMENT INC., | : | |
| | : | |
| Respondents, | : | |
| | : | |
| to satisfy judgment against ALBERTO VILAR, | : | |
| GARY TANAKA, AMERINDO INVESTMENT | : | |
| ADVISORS, INC. (U.S.), and AMERINDO | : | |
| INVESTMENT ADVISORS, INC. (PANAMA), | : | |
| | : | |
| Pursuant to CPLR §§ 5225 and 5227. | : | |

-------------------------------------------------------------------- x

**Petition for Payment to Judgment Creditors, or Delivery of Property Not In Possession of Judgment Debtors**

Petitioners, Lisa Mayer and Debra Mayer ("Mayers"), by their attorneys, Begos Horgan & Brown LLP, for their petition in this action, allege as follows:

**The Parties**

1.     The Mayers are sisters, and residents of the County of Westchester, State of New York.

2.     Upon information and belief, respondent J.P. Morgan Securities LLC, formerly known  as Bear Stearns & Co., Inc. ("JP Morgan Securities") is a Delaware company with a place of business at One Chase Plaza, New York, NY.

3.     Respondent United States of America is named because it may claim rights to the money and/or property at issue pursuant to a criminal conviction of Alberto Vilar and Gary

Tanaka, and a forfeiture order issued in that criminal action, which forfeiture order the United States has represented should be vacated, as described below.

4. Upon information and belief, respondent Amerindo Technology Growth Fund II, Inc. ("ATGF II") claims to be a Panama corporation, with a last known business address at 44 Upper Grosvenor Street, London, England. ATGF II is the nominal owner of a brokerage account with JP Morgan Securities.

5. Upon information and belief, respondent Amerindo Management Inc. ("AMI") claims to be a Panama corporation, with a last known business address at 44 Upper Grosvenor Street, London, England. ATGF II is the nominal owner of a brokerage account with JP Morgan Securities.

6. Upon information and belief, judgment debtor Alberto Vilar is an inmate at Federal Correction Institution Fort Dix, New Jersey, Inmate No. 57828-054.

7. Upon information and belief, judgment debtor Gary Tanaka is an inmate at Federal Correction Institution Terminal Island, San Pedro, California, Inmate No. No. 57819-054.

8. Upon information and belief, judgment debtor Amerindo Investment Advisors, Inc. ("Amerindo-US") is a California corporation, licensed to do business in New York.

9. Upon information and belief, judgment debtor Amerindo Investment Advisors, Inc. ("Amerindo-Panama") claims to be a Panama corporation distinct from Amerindo-US, and purporting to have its principal place of business in Panama and/or London, England.

**The Judgments**

10. On October 28, 2011, a judgment was entered in the Supreme Court of the State of New York, County of New York, Index No. 603234/2004 ("Mayer Action") in favor of Lisa

Mayer, Debra Mayer, Daba, Inc. and Aba, Inc., and against Vilar, Tanaka, Amerindo-US and

Amerindo-Panama, in the amount of $19,133,299.78 ("Judgment"). A copy of the Judgment is

annexed as **Exhibit A**. Notice of Entry of this Judgment was served on October 31, 2011, and no

notice of appeal was filed by any party.

11.    On April 18, 2012, a supplemental judgment ("Supplemental Judgment") was

entered in the Mayer Action in favor  of Lisa Mayer, Debra Mayer, Daba, Inc. and Aba, Inc.

against the following:

A.    Vilar, in the amount of $2,530,909.21.

B.    Amerindo-US and Amerindo-Panama (together, "Amerindo") in the amount of

$759,489.30.

C.    Amerindo, directing it to transfer and deliver 243,902.43 shares of Intouch, Inc.

Series A Preferred stock ("Intouch Preferred Shares").

A copy of the Supplemental Judgment is annexed as **Exhibit B**. Notice of Entry was served on

April 18, 2012; Alberto Vilar filed a notice of appeal appealing the portion of the supplemental

judgment that awarded $2,530,909.21 against him. Amerindo did not appeal. As of the date of

this petition, no bond has been filed, and no stay of enforcement has been ordered.

12.    No amount of the Judgment or Supplemental Judgment has been paid to date.

Accordingly, the following parties are indebted to the Mayers in the following amounts:

A.    Vilar, Tanaka and Amerindo in the amount of $19,133,299.78, plus interest, costs,

poundage fees and disbursements, plus

B.    Vilar, the additional amount of $2,530,909.21, plus interest, costs, poundage fees and

disbursements, plus

C.    Amerindo, the additional amount of $759,489.30, plus the Intouch Preferred Shares, plus interest, costs, poundage fees and disbursements.

**The JP Morgan Securities Accounts**

13.    Tanaka opened a brokerage account no. 102-01495 in ATGF II's name with JP Morgan Securities' predecessor ("ATGF II Account"). The account agreements were executed by Tanaka, who represented himself as Director of ATGF II, and also named Vilar and Tanaka as authorized officers/agents for ATGF II.  A corporate resolution dated November 5, 1987 identifies Vilar as President, and Tanaka as Vice President of ATGF II. The account documents also irrevocably designated and appointed David Mainzer as ATGF II's authorized agent to receive service of process on its behalf. Copies of the relevant account agreements for the ATGF II Account are annexed as **Exhibit C**.

14.    As of March 30, 2012, JP Morgan Securities reported that the value of the money and priced securities in the ATGF II Account was $25,642,226. A copy of the March 30, 2012 statement is annexed as **Exhibit D**.

15.    The ATGF II Account also included a number of securities that are listed as "unpriced,"  and thus are in addition to the $25,642,226 in value. Included in the unpriced securities are 607,600  Intouch Preferred Shares.

16.    Tanaka opened brokerage account no. 10-01485 in AMI's name  with JP Morgan Securities' predecessor  ("AMI Account"). The account agreements were executed by Tanaka, who represented himself as Executive Vice President of AMI, and also named Tanaka and Vilar as Directors of AMI. The account documents also irrevocably designated and appointed David

Mainzer as AMI's agent to receive service of process on its behalf. Copies of the relevant account agreements for the AMI Account are annexed as **Exhibit E**.

17.     As of March 30, 2012, JP Morgan Securities reported that the value of the money and securities in the AMI Account was $1,107,348. A copy of the March 30, 2012 statement is annexed as **Exhibit F**.

**The Criminal Conviction and the Government's Forfeiture**

18.     In 2005, Vilar and Tanaka were charged with numerous federal crimes in connection with their dealings with the Mayers and others.  A copy of the U.S. Attorneys' Superseding Indictment in  *U.S. v. Vilar and Tanaka*, 05 Cr. 621 ("Criminal Action") is annexed as **Exhibit G**. Vilar and Tanaka were both found guilty of multiple crimes, and they were sentenced on February 5, 2010 to nine and five years, respectively. Copies of the  Judgments in the Criminal Action are annexed as **Exhibit H**.

19.     On or about November 9, 2010, the United States District Court entered an Order of Forfeiture of Substitute Assets ("Forfeiture Order") in the Criminal Action, which identified the ATGF II Account and the AMI Account as "property of the defendants" (*i.e.*, Vilar and Tanaka), and forfeited that property to the United States, subject to the United States obtaining a Final Order of forfeiture. A true copy of the Forfeiture Order is annexed as **Exhibit I**.

20.     The United States District Court, in entering the Forfeiture Order, confirmed that the money and securities in  ATGF II and AMI Accounts had been property of Vilar and Tanaka, that was properly reachable by their creditors. Neither defendant contended that the ATGF II and/or AMI Account should not have been included in the Forfeiture Order.

21.     The United States provided notice of the Forfeiture Order as required. Neither ATGF II nor AMI objected to the Forfeiture Order, or contended that it had ownership rights in the ATGF II and AMI Accounts that were superior to Vilar's and Tanaka's ownership rights.

22.     The United States has not yet obtained a Final Order of forfeiture, as the parties disputed the calculation of the amount of the forfeiture and for other reasons. In a brief filed by the United States in connection with Vilar and Tanaka's appeal of their conviction, the Government represented to the United States Court of Appeals for the Second Circuit: "the Government consents to the vacatur of the forfeiture orders and respectfully requests that this matter be remanded to the District Court for the limited purpose of allowing the District Court to determine the amount of the forfeiture money judgments." An excerpt from the United States' appellate brief is annexed as **Exhibit J**.

**The Mayers' ATGF Investment and Intouch Preferred Shares Are Part of the ATGF II Account**

23.     The Supplemental Judgment included an award of the sum of $759,489.30, on account of the Mayers' investment in ATGF (Ex. B). Vilar, Tanaka and Amerindo placed ATGF investments (along with other funds, as discussed below), into the ATGF II Account. For example, on October 18, 1991, the Mayers delivered a check in the amount of $2,300,000, payable to Amerindo Technology Growth Fund, for deposit into the ATGF II Account. Amerindo recognized part of this deposit as an investment in ATGF, and issued numerous statements confirming that fact. Copies of documents reflecting the investment are annexed as **Exhibit K**.

**The Mayers' GFRDA Investments Were Commingled in the ATGF II and AMI Accounts**

24.    The Mayers' primary investment with the Judgment Debtors was a Guaranteed Fixed Rate Deposit Account ("GFRDA") that was supposedly invested with Amerindo, and guaranteed by Vilar and Tanaka. The Mayers' GFRDA was the basis of the initial judgment, in the amount fo 19,133,299.78 (Ex. A).

25.    Judgment Debtors did not treat funds deposited into ATGF II and AMI Accounts as money belonging to distinct entities. To the contrary, Judgment Debtors directed that funds to be invested in GFRDAs be deposited into those Accounts, diverted funds held in those accounts into GFRDA investments, and otherwise kept in those accounts money that supposedly had been used to purchase an Amerindo-issued GFRDA. For example:

   A.    When the Mayers made their $2,300,000 investment in ATGF by depositing that money into the ATGF II Account, Judgment Debtors unilaterally invested two-thirds of that deposit in a GFRDA, without, upon information and belief, transferring the funds out of the ATGF II Account. A November 15, 1991 letter from Amerindo regarding that deposit stated: "Albert and Gary felt it would be best to 'time' your investment into the Fund by stages. They thus jointly decided that it would be prudent and in your best interest to invest immediately approximately 33% of your total contribution in the Amerindo Technology Growth Fund. The remaining 66% is being invested in a Fixed Deposit Account for three months. ... Please be assured that this method of essentially 'dollar averaging' the purchase of shares is quite common[.]" (Ex. K).

   B.    In May 1995, the Mayers made a $151,000 investment in a GFRDA. A May 2, 1995 memorandum from Amerindo advised Lisa Mayer to wire the funds for the

GFRDA into the ATGF II Account. The Mayers promptly made the wire that same day.  On June 9, 1995, Amerindo acknowledged receipt of the funds, and stated: A new Fixed Rate Deposit Account has been opened for you, at the confirmed rate of 13% per annum." Amerindo delivered to the Mayers multiple statements reflecting the $151,000 GFRDA. Copies of documents reflecting this deposit are annexed as **Exhibit L**.

C.    In July 1998, the Mayers made two deposits, in the amounts of $500,000 and $1,350,000, into the ATGF II account. Amerindo initially used the $500,000 deposit to purchase an ATGF investment, but several days later cancelled that investment and invested the funds in a GFRDA instead. The $1,350,000 deposit was used to fund a GFRDA investment. True copies of documents reflecting this deposit and investment are annexed as **Exhibit M**.[1]

26.    The United States introduced evidence during the trial in the Criminal Action establishing that Vilar, Tanaka and Amerindo routinely used funds in the ATGF II and AMI Accounts (as well as other accounts) for the purchase of GFRDA investments for the Mayers and other investors. The total funds commingled in this manner from 1995 to 2000 exceeded $50,000,000. A true copy of Government Exhibits 8202 and 8202-B is annexed as **Exhibit N**.

27.    The Government's witness testified that, though Amerindo shifted money in the ATGF II and AMI Accounts (or one of the other similar accounts) from one investment to

---

[1] The correspondence regarding these investments is directed from Amerindo to Monique Frazier at "Keba Incorporated" in the Bahamas. Judgment Debtors often instructed the Mayers to have their investments be in the names of various companies formed for the purpose, and Keba was one of those companies. Ms. Frazier was a banker in the Bahamas who managed these companies. The funds at issue belonged to the Mayers.

another on Amerindo's books (*e.g.*, from ATGF to GFRDA), the actual funds were not transferred out of the account (Trial Transcript, pp. 4590-92). Thus, the ATGF II and AMI Accounts (and other similar accounts) held funds that belonged to Amerindo as part of GFRDA investments. Excerpts of the trial transcript of the Criminal Trial are annexed as **Exhibit O**.

**The Funds in the ATGF II and AMI Accounts Belong to Vilar, Tanaka, and/or Amerindo**

28.    Upon information and belief, to the extent ATGF II and/or AMI ever existed as corporate entities, they are no longer in existence. The two owners of all Amerindo entities are in jail, and Amerindo has no current employees, lawyers, offices or  books and records. To the extent these companies do not exist today, any assets they nominally own, including the ATGF II and AMI Accounts, are owned by Amerindo and/or Vilar and Tanaka.

29.    Upon information and belief, to the extent ATGF II and/or AMI had any ownership interest in the ATGF II and AMI Accounts, that ownership interest was divested by virtue of the Forfeiture Order, and by ATGF II's and AMI's failure to object to the Forfeiture Order.

30.    Judgment Debtors exercised complete domination and control over ATGF II and AMI. They used that domination and control to commit a fraud or wrong against the Mayers which resulted in the injuries that gave rise to the Judgment and the Supplemental Judgment. Specifically, and without limitation, Judgment Debtors lied about the way in which they would invest the money invested in GFRDAs, in violation of federal securities laws. They stated that money invested in a GFRDA would be invested safely, in investments like government bonds, *not* the riskier investments purported purchased for investors in ATGF. In reality, all of the money purported invested with any of the Judgment Debtors, or with ATGF II, was kept in one

"large bin," subject to the control and domination of Judgment Debtors. The Judgment and the Supplemental Judgment are a direct result of Judgment Debtors' fraudulent acts.

31.    If ATGF II and/or AMI existed in the past or today, they have been so dominated by Judgment Debtors, and their separate entities so ignored by Judgment Debtors, that they primarily transact the Judgment Debtors' business instead of their own. As such, ATGF II and AMI are the Judgment Debtors' alter egos.

**The Mayers' Lien and Enforcement Rights**

32.    No Judgment Debtor has appealed the Judgment. Upon information and belief, as of the date of the verification of this petition, no bond has been filed by or on behalf of any Judgment Debtor.

33.    The Mayers have a valid lien against the money and assets in the ATGF II and AMI Accounts  to the extent of the Judgment and Supplemental Judgment referred to above, together with interest, costs, sheriff's poundage, fees, and disbursements and that, furthermore, the lien is superior to the rights of all respondents in this proceeding. The Mayers have taken the following significant steps:

A.    On April 19, 2012, a restraining notice was served by the Mayers upon JP Morgan & Chase Co., specifically identifying the ATGF II and AMI Accounts. A copy of that restraining notice is annexed as **Exhibit P**.

B.    On or about June 6, 2012, a property execution with notice to garnishee, and with two exemption notices, was delivered to the Sheriff of New York County. A copy is annexed as **Exhibit Q.**

34.    JP Morgan Securities has been named as a respondent because it is in physical possession or control of the ATGF II Account and the AMI Account.

35.    The United States has been named as a respondent because the Forfeiture Order gave it certain rights to the ATGF II and AMI Accounts. Upon information and belief, the Mayers' lien is superior to any interest of the United States, because the United States has agreed to the vacatur of the Forfeiture Order, on which its rights to the money and assets in the ATGF II and AMI Accounts depend.

36.    ATGF II and AMI have been named as respondents to the extent that they exist as entities distinct from Vilar, Tanaka and Amerindo, and to the extent they claim rights in the ATGF II and/or AMI Accounts.

37.    The Mayers, by virtue of their superior lien, are  entitled to a turnover of a sum of money, and Intouch Preferred Shares, from the ATGF II and AMI Accounts  sufficient to satisfy the Judgment and Supplemental Judgment.

38.    This proceeding is instituted by order to show cause to request that the Court specify the manner of service on the United States, ATGF II and AMI. As noted above, they have, on information and belief, ceased to exist as operating entities, if they ever existed at all. Tanaka and Vilar, who are directors and/or officers of both, are in Federal Correctional Institutions for the crimes they committed against the Mayers and others.

39.    There has been no prior application for the relief sought herein.

WHEREFORE, petitioners respectfully request that JP Morgan Securities be directed to turn over to petitioners and/or the sheriff of the County of New York the principal sum of $19,133,299.78 (Vilar, Tanaka and Amerindo), plus the additional amount of $2,530,909.21

11

(Vilar), plus the additional amount of $759,489.30 (Amerindo), plus the Intouch Preferred

Shares (Amerindo), plus interest, costs, poundage fees and disbursements, and such other and

further relief as to this court may seem just and proper.

Dated:        June 25, 2012

BEGOS HORGAN & BROWN LLP

By: _____
          Patrick W. Begos
Attorneys for Petitioners
2425 Post Road
Southport, CT 06890
(230) 254-1900
pwb@begoshorgan.com

## VERIFICATION

STATE OF NEW YORK      )

                                     )   ss.:

COUNTY OF WESTCHESTER   )

      LISA MAYER, being duly sworn, deposes and says:

      I am a petitioner in this proceeding. I have read the foregoing pleading, and the same is true to my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe it to be true.

                                            Lisa Mayer

Sworn to before me this
**25**   day of June 2012

Notary Public

BRIDGET STAFF
Notary Public, State of New York
No. 01ST6026571
Qualified in Westchester County
Commission Expires June 14, 20__

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------x
LISA MAYER, DEBRA MAYER, DABA, INC. and   :
ABA, INC.,   :   Index No. 603234/04
            Plaintiffs,   :   IAS Part 54
  :   (Hon. Shirley W. Kornreich)
    – against –   :
  :   **Notice of Entry of Judgment**
ALBERTO VILAR, GARY TANAKA, AMERINDO   :
INVESTMENT ADVISORS, INC. (U.S.), AMERINDO   :
INVESTMENT ADVISORS, INC. (PANAMA),   :
  :
        Defendants.   :
------------------------------------------------------------------------ x

      PLEASE TAKE NOTICE that the within is a true copy of a Judgment entered October 28,

2011 in the New York County Clerk's Office.

Dated:      Bronxville, New York
          October 31, 2011

                         BEGOS HORGAN & BROWN  LLP

                         By:_____
                           Patrick W. Begos
                         Attorneys for Plaintiffs
                         7 Pondfield Road
                         Bronxville, NY 10708-0369
                         (914) 961-4441

TO:  ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK PC
     Attorneys for Alberto Vilar
     875 Third Avenue
     New York, NY 10022

     GARY TANAKA
     FCI Terminal Island
     PO Box 3007
     San Pedro, CA 90731

     HELLER EHRMAN LLP
     Attorneys for Amerindo Investment Advisors, Inc. (U.S.) (defaulted)
     c/o Kevin J. Toner, Esq.
     Patton Boggs LLP
     1185 Avenue of the Americas
     New York, NY 10036



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------x
LISA MAYER, DEBRA MAYER, DABA, INC. and    :
ABA, INC.,                                 :     Index No. 603234/2004
              Plaintiffs,                :     I.A.S. Part 54
                                           :     (Kornreich, J.)
    – against –                           :
                                           :
ALBERTO VILAR, GARY TANAKA, AMERINDO       :
INVESTMENT ADVISORS, INC. (U.S.), AMERINDO :
INVESTMENT ADVISORS, INC. (PANAMA),        :
                                           :
              Defendants.                :
--------------------------------------------------------------x

**Certificate Requesting Entry of Judgment in Electronically Filed Case**

    PATRICK W. BEGOS, an attorney admitted to the Bar of the State of New York and a
member of Begos Horgan & Brown LLP, counsel for plaintiffs in the above-captioned
electronically filed case, does hereby request judgment be entered in this case upon the proposed
judgment filed September 29, 2011 (FBEM Document No. 37). Pursuant to CPLR 5017(a), I do
hereby certify that the following documents shall constitute the Judgment-Roll for this Judgment.
Each document is identified by title of the paper, the date filed with the electronic filing system
("FBEM"), and the number of the paper as listed on the FBEM List of Papers Filed.

| Title of Document | Number of Paper on FBEM List of Papers | Date Filed |
|---|---|---|
| ✓ 1) Summons and Complaint | 2 | 9/25/09 |
| ✓ 2) Amended Complaint | 3 | 9/25/09 |
| ✓ 3) Answer | 4 | 9/25/09 |
| ✓ 4) Answer | 5 | 9/25/09 |
| ✓ 5) Order Granting Default Judgment *(003)* | 36 | 9/29/11 |
| ✓ 6) Order Granting Summary Judgment *(006)* | 33 | 8/5/11 |
| ✓ 7) Judgment | 37 | 9/29/11 |
| ✓ 8) Certificate | 38 | 9/29/11 |
| ✓ 9) Bill of costs | 39 | 9/29/11 |



The documents listed above are available on the FBEM website and may be downloaded and printed as needed.

Dated:      Bronxville, NY
            September 29, 2011

                                    BEGOS HORGAN & BROWN LLP


                                    By: S/ Patrick W. Begos
                                        Patrick W. Begos
                                    Attorneys for Plaintiffs
                                    7 Pondfield Road
                                    Bronxville, New York 10708
                                    (914) 961-4441



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------x
LISA MAYER, DEBRA MAYER, DABA, INC. and        :
ABA, INC.,                                                      :        Index No. 603234/2004
               Plaintiffs,                       :        I.A.S. Part 54
                                   :        (Kornreich, J.)

     – against –                                          :
                                    :
ALBERTO VILAR, GARY TANAKA, AMERINDO           :        **Judgment**
INVESTMENT ADVISORS, INC. (U.S.), AMERINDO     :
INVESTMENT ADVISORS, INC. (PANAMA),            :
                                  :
              Defendants.                   :
------------------------------------------------------------------------x

WHEREAS Alberto Vilar ("Vilar") and Amerindo Investment Advisors, Inc. commenced this

action on October 1, 2004 (Doc. 2) and effected service of the summons and complaint on Lisa Mayer,

Debra Mayer and Edward Adams;

WHEREAS, Lisa Mayer, Debra Mayer and Edwards Adams all appeared by counsel, and Lisa

Mayer, Debra Mayer, Daba, Inc. and Aba, Inc. (collectively, "Mayers"), asserted counterclaims;

WHEREAS, by consent order dated June 2, 2005, Vilar and Amerindo withdrew their claims

in full;

WHEREAS, by order dated July 8, 2005 and entered August 11, 2005, the Court ordered that

the caption of the action be amended to reflect the Mayers as plaintiffs and Vilar, Gary Tanaka,

Amerindo Investment Advisors, Inc. (U.S.) ("Amerindo US") and Amerindo Investment Advisors,

Inc. (Panama) ("Amerindo Panama") as defendants;

WHEREAS, the Mayers served a Supplemental Summons and Amended Complaint on Tanaka,

Amerindo US and Amerindo Panama on November 26, 2008 (Doc. 3);

WHEREAS, Vilar, by attorneys Robinson Brog Leinwand Greene Genovese & Gluck P.C.,

answered the Amended Complaint on January 15, 2009 (Doc. 4);

WHEREAS, by order dated April 30, 2009 and entered May 4, 2009, the Court granted a default judgment for the Mayers and against Amerindo US and Amerindo Panama as to liability;

WHEREAS, Tanaka, by attorneys DePetris & Bachrach, LLP, moved to dismiss the Amended Complaint, and the Court, by order dated July 28, 2009, granted the motion in part, dismissing the Second Cause of Action for Conversion, and denied the motion as to the remaining claims;

WHEREAS, Tanaka answered the Amended Complaint on September 9, 2009 (Doc. 5);

WHEREAS, the Mayers moved on November 3, 2010 (Doc. 28) for an order: (a) granting summary judgment on the First Cause of Action against all defendants, for breach of contract, directing entry of judgment in the amount of at least $11,224,936.46 plus interest; (b) granting summary judgment on the Third and Seventh Causes of Action against all defendants, for violation of Gen. Bus. L. § 349 ("GBL 349") and for common-law fraud, directing entry of judgment for compensatory damages, and ordering a hearing on additional damages, including attorneys' fees and punitive damages; (c) granting summary judgment as to liability on their Fourth Cause of Action against Vilar, for breach of fiduciary duty, and ordering a hearing on damages; (d) granting summary judgment on their Fifth and Sixth Causes of Action against the corporate defendants, and directing entry of judgment; (e) pursuant to CPLR 3212(e) and 5012, severing all causes of action, or parts thereof, as to which final judgment cannot be entered at this time; and (f) granting such other and further relief as the Court deemed fair;

WHEREAS, the Court, by order dated August 4, 2011 and entered August 5, 2011 (Doc. 33), *inter alia*: (1) granted the Mayers' motion for summary judgment as to their first, third, and fourth causes of action; (2) severed the Mayers' first cause of action and directed the Clerk to enter judgment in favor of the Mayers and against defendants Alberto Vilar, Gary Tanaka, Amerindo Investment Advisors, Inc. (U.S.) and Amerindo Advisors, Inc. (Panama) in the amount of $11,224,936.46,

2

together with interest at the rate of 9% per annum from the date of January 1, 2004 until the date of

the order, and thereafter at the statutory rate, as calculated by the Clerk, together with costs and

disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs; and (3) stayed

execution of the judgment until the distribution of the monies held as a restitution fund by the federal

government in the case of *United States v. Vilar* (05 Cr. 621), is concluded;

NOW, upon motion by Begos Horgan & Brown LLP, attorneys for the Mayers, it is hereby

████████, ADJUDGED ████████, that ██████████████ Plaintiffs, Lisa

Mayer (residing at 71 Malvern Road, Yonkers, New York), Debra Mayer (residing at 71 Malvern

Road, Yonkers, New York), Daba, Inc. (71 Malvern Road, Scarsdale, New York) and Aba, Inc. (71

Malvern Road, Scarsdale, New York), ████ have judgment and recover against defendants, Alberto Vilar (presently residing at

Federal Correction Institution Fort Dix, Fort Dix, New Jersey), Gary Tanaka (presently residing at the

Federal Correction Institution Terminal Island, Terminal Island, California), Amerindo Investment

Advisors, Inc (U.S.) (last known address at 399 Park Avenue, New York, NY) and Amerindo

Investment Advisors, Inc. (Panama) (last known address at 399 Park Avenue, New York, NY), ████████

████████ in the ████ sum of $ 11,224,936.46, with ████████

██████████████████████ interest at the rate of 9% per

annum from January 1, 2004 ████████ of ████ $ 7,907,583.32 ████████

████████████████████████████████████

████████████████████████████████████

and costs and disbursements as taxed by The Clerk, of $ 780.00, for

a Total of $ 19,133,299.78, and That The Plaintiffs

have execution Thereon.

**FILED**

_____
/Clerk

OCT 28 2011          3

NEW YORK
COUNTY CLERK'S OFFICE

INDEX NO. 603234/2004
RECEIVED NYSCEF: 09/29/2011
www.blumberg.com

FILED: NEW YORK COUNTY CLERK 09/29/2011

NYSCEF... No. 356  Bill of Costs (with CPLR sections) Blank Court: 1-95 

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 603234/2004

LISA MAYER, DEBRA MAYER, DABA, INC. and ABA, INC

*Plaintiff(s)*

against

ALBERTO VILAR, GARY TANAKA, AMERINDO INVESTMENT ADVISORS, INC. (U.S.), AMERINDO INVESTMENT ADVISORS, INC. (PANAMA),

*Defendant(s)*

**Costs of** Plaintiffs

| COSTS | $ |
|---|---|
| Costs before note of issue CPLR §8201 subd. 1 | 200 |
| Costs after note of issue CPLR §8201 subd. 2 | 200 |
| Trial of issue CPLR §8201 subd. 3 | |
| Allowance by statute CPLR §8302(a),(b) | |
| Additional allowance CPLR §8302(d) | |
| Motion costs CPLR §8202 | |
| Appeal to Appellate Term CPLR §8203(b) | |
| Appeal to Appellate Division CPLR §8203(a) | |
| Appeal to Court of Appeals CPLR §8204 | |
| Costs upon frivolous claims and counterclaims CPLR §8303-a | |

| DISBURSEMENTS | $ |
|---|---|
| Fee for index number CPLR §8018(a) | |
| Referee's fees CPLR §8301(a)(1), 8003(a) | |
| Commissioner's compensation CPLR §8301(a)(2) | |
| Clerk's fee, filing notice of pend. or attch. CPLR §8021(a)(10) | |
| Entering and docketing judgment CPLR §8301(a)(7), 8016(a)(2) | 0.50 |
| Paid for searches CPLR §8301(a)(10) | |
| Affidavits & acknowledgments CPLR §8009 | 220.00  80 |
| Serving copy summons & complaint CPLR §8011(h)(1), 8301(d) | 95.00 ✓ |
| Request for judicial intervention | 135.00  30 |
| Note of issue CPLR §8020(a) | |
| Paid referee's report CPLR §8301(a)(12) | |
| Transcripts and filing CPLR §8021 | |
| Certified copies of papers CPLR §8301(a)(4) | |
| Satisfaction piece CPLR §5020(a), 8021 | |
| Certified copy of judgment CPLR §8021 | |
| Postage CPLR §8301(a)(12) | |
| Jury fee CPLR §8020(c) | |
| Stenographers' fees CPLR §8002, 8301 | |
| Sheriff's fees on execution CPLR §8011, 8012 | 40  00 |
| Sheriff's fees, attachment, arrest, etc. CPLR §8011 | |
| Paid printing cases CPLR §8301(a)(6) | |
| Clerk's fees Court of Appeals CPLR §8301(a)(12) | |
| Paid copies of papers CPLR §8016(a)(4) | 135  00 |
| Motion expenses CPLR §8301(b) | |
| Fees for publication CPLR §8301(a)(3) | |
| Serving subpoena CPLR §8011(h), 8301(d) | |
| Paid for search CPLR §8301(a)(10) | |
| | |
| Referee's Report | |
| Attendance of Witnesses CPLR §8001(a)(b)(c), 8301(a)(1) | |

I HEREBY CERTIFY THAT I HAVE ADJUSTED THIS BILL OF COSTS AT
$ 780.00

OCT 28 2011

CLERK

FILED
OCT 28 2011
NEW YORK
COUNTY CLERK'S OFFICE

COSTS ............... $  400.00
DISBURSEMENTS ........... 380.00  440.50
TOTAL ................ $  840.50

$  440.50

780.00                          380.00

ATTORNEY'S AFFIRMATION

STATE OF NEW YORK, COUNTY OF WESTCHESTER ss.:

The undersigned, an attorney admitted to practice in the courts of this state, affirms: that I am a member of Begos Horgan & Brown LLP

the attorney(s) of record for the Plaintiffs

in the above entitled action; that the foregoing disbursements have been or will be necessarily be made or incurred in this action and are reasonable in amount and that each of the persons named as witnesses attended as such witness on the trial, hearing or examination before trial herein the number of days set opposite their names; that each of said persons resided the number of miles set opposite their names, from the place of said trial, hearing or examination; and each of said persons, as such witness as aforesaid, necessarily traveled the number of miles to set opposite their names in traveling to, and the same distance in returning from the same place of trial, hearing or examination; and the copies of documents or papers as charged herein were actually and necessarily obtained for use.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated:

**FILED**

OCT 28 2011

NEW YORK
COUNTY CLERK'S OFFICE

Patrick W. Begos

---

Index No. 603234/2004
SUPREME COURT NEW YORK
COUNTY OF NEW YORK

LISA MAYER, DEBRA MAYER, DABA, INC. and ABA, INC

Plaintiff(s)

against

ALBERTO VILAR, GARY TANAKA, AMERINDO INVESTMENT ADVISORS, INC. (U.S.), AMERINDO INVESTMENT

Defendant(s)

## Bill of Costs

and Notice of Taxation

Please Take Notice that the within is a true copy of the items of costs and disbursements in the within action

taxed *

and the same will be taxed *

by the clerk of

Court, at his/her office in the courthouse thereof on

at                M.

of that day—and the amount inserted in the judgment.

Yours, etc.

Begos Horgan & Brown LLP
*Attorney(s) for*
Plaintiffs

To

*Attorney(s) for*

Service of the within bill of costs and notice of taxation is hereby admitted on

*Attorney(s) for*

* Check one (CPLR § 8402, 8403)

---

State of New York, County of                ss.:

being duly sworn, deposes, and says; that deponent is not a party to the action, is over 18 years of age and resides at

That on
deponent served the within bill of costs and notice of taxation on

attorney(s) for
herein, at his/her office at

during his/her absence from said office.
Strike out either (a) or (b).

(a) by then and there leaving a true copy of the same with

his/her clerk; partner, person having charge of said office.

(b) and said office being closed, by depositing a true copy of the same, enclosed in a sealed wrapper directed to said attorney(s), in the office letter drop or box.

Sworn to before me on

---

State of New York, County of                ss.:

being duly sworn, deposes and says; that deponent is not a party to the action, is over 18 years of age and resides at

That on
deponent served the within bill of costs and notice of taxation on

attorney(s) for
at

the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a post paid properly addressed wrapper, in–a post office–official depository under the exclusive care and custody of the United Sates Post Service within New York State.

Sworn to before me on

Supreme Court Records OnLine Library - page 5 of 5



Index No. 603234/04

SUPREME COURT
OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LISA MAYER, DEBRA MAYER, DABA, INC.
and ABA, INC.,

Plaintiffs,

- against -

ALBERTO VILAR, GARY TANAKA, AMERINDO
INVESTMENT ADVISORS INC.(U.S), AMERINDO
INVESTMENT ADVISORS, INC.(PANAMA),

Defendants.

Judgment

Patrick W. Begos
for the Plaintiffs
Begos Horgan & Brown LLP
1 Pondfield RS
Bronxville, NY 10708
(914) 961-4441

1 - 16

**FILED AND
DOCKETED**

OCT 28 2011

AT     4:19     PM
N.Y., CO. CLK'S OFFICE

## AFFIRMATION OF SERVICE

PATRICK W. BEGOS, an attorney licensed to practice before the Courts of the State of New York, affirms the following to be true under penalty of perjury:

1.   I am not a party to this action and I am over 18 years of age.

2.   On October 31, 2011, I served the within Notice of Entry of Judgment by causing true copies thereof, in properly sealed, post-paid wrappers, to be deposited in an official depository under the exclusive care and custody of the U.S. Postal Service, addressed to:

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK PC
Attorneys for Alberto Vilar
875 Third Avenue
New York, NY  10022

GARY TANAKA
FCI Terminal Island
P.O. Box 3007
San Pedro, CA 90731

HELLER EHRMAN LLP
Attorneys for Amerindo Investment Advisors, Inc. (U.S.) (defaulted)
c/o Kevin J. Toner, Esq.
Patton Boggs LLP
1185 Avenue of the Americas
New York, NY 10036

Dated:     October 31, 2011

Patrick W. Begos
Begos Horgan & Brown LLP
7 Pondfield Road
Bronxville, NY 10708-0369
(914) 961-4441

EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------x

LISA MAYER, DEBRA MAYER, DABA, INC. and     :
ABA, INC.,     :    Index No. 603234/04

            Plaintiffs,     :    IAS Part 54
    :    (Hon. Shirley W. Kornreich)

      – against –     :

    :    **Notice of Entry of**
    :    **Supplemental Judgment**
ALBERTO VILAR, GARY TANAKA, AMERINDO     :
INVESTMENT ADVISORS, INC. (U.S.), AMERINDO     :
INVESTMENT ADVISORS, INC. (PANAMA),     :

            Defendants.     :

------------------------------------------------------------------------x

       PLEASE TAKE NOTICE that the within is a true copy of a Supplemental Judgment entered

April 17, 2012 in the New York County Clerk's Office.

Dated:     Bronxville, New York
          April 18, 2012

                               BEGOS HORGAN & BROWN  LLP

                               By: _____
                                   Patrick W. Begos
                                 Attorneys for Plaintiffs
                                 7 Pondfield Road
                                 Bronxville, NY 10708-0369
                                 (914) 961-4441

TO:   ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK PC
       Attorneys for Alberto Vilar
       875 Third Avenue
       New York, NY 10022

       GARY TANAKA
       FCI Terminal Island
       PO Box 3007
       San Pedro, CA 90731

       HELLER EHRMAN LLP
       Attorneys for Amerindo Investment Advisors, Inc. (U.S.) (defaulted)
       c/o Kevin J. Toner, Esq.
       Patton Boggs LLP
       1185 Avenue of the Americas
       New York, NY 10036

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
LISA MAYER, DEBRA MAYER, DABA, INC. and        :
ABA, INC.,                                                      :        Index No. 603234/2004
                    Plaintiffs,                               :        I.A.S. Part 54
                                                                 :        (Kornreich, J.)
          – against –                                        :
                                                                 :
ALBERTO VILAR, GARY TANAKA, AMERINDO      :
INVESTMENT ADVISORS, INC. (U.S.), AMERINDO   :
INVESTMENT ADVISORS, INC.  (PANAMA),          :
                                                                 :
                    Defendants.                             :
------------------------------------------------------------x

### Certificate Requesting Entry of Supplemental Judgment in Electronically Filed Case

PATRICK W. BEGOS, an attorney admitted to the Bar of the State of New York and a
member of Begos Horgan & Brown LLP, counsel for plaintiffs in the above-captioned
electronically filed case, does hereby request judgment be entered in this case upon the Decision,
Order and Supplemental Judgment entered March 23, 2012 (FBEM Document No. 43). Pursuant
to CPLR 5017, I do hereby certify that the following documents shall constitute the Judgment-
Roll for this Judgment. Each document is identified by title of the paper, the date filed with the
electronic filing system ("FBEM"), and the number of the paper as listed on the FBEM List of
Papers Filed.

| Title of Document | Number of Paper on FBEM List of Papers | Date Filed | Hard Copy Filed |
|---|---|---|---|
| 1) Summons and Complaint | 2 | 9/25/09 | 10/1/04 |
| 1A) Order amending caption (motion seq. 1) | | | 8/11/05 |
| 2) Amended Complaint | 3 | 9/25/09 | |
| 3) Answer | 4 | 9/25/09 | |
| 4) Answer | 5 | 9/25/09 | |
| 5) Order Granting Default Judgment (motion seq. 3) | ~~36~~ | ~~9/29/11~~ | 5/4/09 |
| 5A) motion for default judgment | 45 | 4/16/12 | |
| 6) Order Granting Summary Judgment | 33 | 8/5/11 | |
| 6A) Notice of motion, affidavit, affirmation | 28, 29, 30 | 11/2/10 | |
| 7) ~~Bill of Costs~~ | ~~39~~ | ~~9/29/11~~ | |
| 8) ~~Judgment~~ | ~~40~~ | ~~10/31/11~~ | |

| 9) Decision, Order and Supplemental Judgment | 43 | 3/23/12 |

The documents listed above are available on the FBEM website and may be downloaded and printed as needed.

Dated:     Bronxville, NY
           March 26, 2012

                              BEGOS HORGAN & BROWN LLP


                              By: S/ Patrick W. Begos
                                  Patrick W. Begos
                              Attorneys for Plaintiffs
                              7 Pondfield Road
                              Bronxville, New York 10708
                              (914) 961-4441



FILED
APR 17 2012
COUNTY CLERK'S OFFICE
NEW YORK

FILED: NEW YORK COUNTY CLERK 03/23/2012
NYSCEF DOC. NO. 43

INDEX NO. 603234/2004
RECEIVED NYSCEF: 03/23/2012

JUSTICE SHIRLEY WERNER KORNREICH

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
-------------------------------------------------------------------X
LISA MAYER, DEBRA MAYER, DABA, INC.
& ABBA, INC.,

      Plaintiffs,

   -against-

ALBERTO VILAR, GARY TANAKA, AMERINDO
INVESTMENT ADVISORS, INC. (U.S.), AMERINDO
INVESTMENT ADVISERS, INC. (PANAMA),

      Defendants.
-------------------------------------------------------------------X

Index No. 603234/04

DECISION, ORDER &
SUPPLEMENTAL
JUDGMENT

SHIRLEY WERNER KORNREICH, J.:

   In the remaining portion of this action for contract and tort damages and for equitable

relief, plaintiffs Lisa Mayer (L. Mayer), Debra Mayer (D. Mayer), Daba, Inc. and Abba, Inc.assert

the following claims: Fourth Cause of Action for Breach of Fiduciary Duty against defendant

Alberto Vilar (damages only); Fifth Cause of Action against the Amerindo defendants for an

Accounting as to the Intouch and ATGF transactions; and Sixth Cause of Action against the

Amerindo defendants for Breach of Contract as to the Intouch and ATGF transactions.

   By earlier order dated August 4, 2011, the court granted summary judgment in favor of

plaintiffs on: the First Cause of Action for Breach of Contract on the Guaranteed Fixed Rate

Deposit Account (GFRDA), and severed the claim; the Third Cause of Action for violation of

General Business Law 349 (liability only), and referred the issue of damages to a Referee; and

the Fourth cause of Action for Breach of Fiduciary Duty (liability only, damages to be tried).

The court denied summary judgment as to the Fifth and Sixth Causes of Action for an

Accounting and Breach of Contract, respectively, and dismissed the Second and Seventh Causes

1

of Action for Conversion and Fraud, respectively, as duplicative of the claim for breach of contract. The court also stayed execution of the Judgment until distribution of the monies held as a restitution fund by the Federal Government in the criminal case of *United States v Vilar* (S3 05 Cr. 621 [KMK]). On October 28, 2011, Judgment on the First cause of Action in the amount of $19,133,299.78 was entered against defendants.

Plaintiffs' Fourth, Fifth and Sixth Causes of action were set for trial on November 28, 2011. After no defendant appeared on that date for trial, the court issued the following orders from the bench: (1) defaulting defendants for their failure to appear and proceed to trial of the action; (2) renewing so much of plaintiffs' motion for summary judgment on the Sixth cause of Action, and granting specific performance directing defendants Amerindo Investment Advisors, Inc. (U.S.) and Amerindo Investment Advisors, Inc. (Panama) (together "Amerindo") to deliver to plaintiffs 243,902.43 shares of Intouch, Inc. Series A Preferred; (3) amending the Fifth Cause of Action to conform to the proof, and that plaintiffs should recover a money judgment against Amerindo in the amount of $446,168.79, with interest at the statutory rate from June 30, 2004; (4) dissolving the stay of execution of judgment ordered in the August 4, 2011 order, and permitting plaintiffs to execute on their judgment; (5) denying money damages for emotional distress and for the sale of assets, including antiques, art work and collectibles; and (6) directing submission of additional briefing regarding plaintiffs' losses caused by Vilar's breach of fiduciary duty (Fourth Cause of Action), including losses from mortgage loans, and that assets plaintiffs sold or surrendered would have been worth more today than the amount plaintiffs received.

I.   *Findings of Fact*

2

After consideration of plaintiffs' additional briefing, and based upon plaintiffs' trial exhibits and an Affidavit of Lisa Mayer regarding damages, the court makes the following findings of fact.

A.    *Mortgage Loans*

Plaintiffs obtained three loans secured by their Yonkers home, which loans were incorporated into a single note for $2,850,000 on February 15, 2006. Plaintiffs first defaulted on March 1, 2008. Plaintiffs have established that as of November 15, 2011, they owed a total of $3,707,977.95 on this consolidated loan, which included principal, interest and various costs incurred by the bank in pursuing payment and seeking foreclosure. Plaintiffs claim they are still working with the bank to avoid foreclosure and that they have already incurred legal fees of $15,564.9.

On November 30, 2006, plaintiff Lisa Mayer (L. Mayer) borrowed $816,000 and plaintiff Debra Mayer (D. Mayer) borrowed $768,750 from R&G Mortgage Corporation (R&G) secured by mortgages on each of the sister's Puerto Rico condo. L. Mayer then borrowed an additional $46,134.87 on credit lines from R&G. Shortly thereafter, plaintiffs defaulted, the loans were accelerated and Judgments were entered. Notices of Public Auction of the condos to satisfy the mortgage Notes were issued by the trial court in San Juan, Puerto Rico, setting July 6, 2009 as the date for the First Auction. Both Notices provided that the initial "Reserve Price" for that First Auction would be amounts that were equal to the amounts of the original Notes, which was $816,000 for L. Mayer and $768,750 for D. Meyer. After default and Judgment on the credit lines, a Judgment Execution Demand to sell the condo at public auction was filed on November 18, 2008.

3

B.   *Additional Expenses and Assets*

The Mayers traveled to London in February 2004 to meet with representatives of Amerindo, to attempt to obtain the money they were owed. They incurred expenses of $3,219.40 for airfare and $2,591.77 for lodging.

To pay for living expenses, the Mayers sold and/or cancelled life insurance policies that they owned against their own lives and the life of their father. On the policy insuring their father's life, the difference between the original death benefit of $1,561,570 and the sale price of $325,000 was $1,236,570. Plaintiffs Lisa and Debra Mayers claim this amount as damages. Due to plaintiffs' outstanding loan of $321,148 against this policy, as of the sale date, the net death benefit was $1,240,422. The difference between the sale price and the net death benefit is $915,422. Plaintiffs also claim as damages the surrender charges for the policies on their lives, totaling $56,650. After deduction of the surrender charges from the cash surrender values of the policies, plaintiffs received net amounts of $15,116.47 and $14,730.41, respectively.

As to the sale of additional assets, including antiques, art work and collectibles, plaintiffs submitted as trial exhibits proof of sales prices. They did not submit any proof as to what the value of these assets would have been today, and they abandoned this claim in their supplemental briefing.

II.   *Conclusions of Law*

"[B]reaches of a fiduciary relationship in any context comprise a special breed of cases that often loosen normally stringent requirements of causation and damages." *Gibbs v Breed, Abbott & Morgan,* 271 AD2d 180, 188-189 (1st Dept 2000). In this context, plaintiffs' burden is to "establish that the offending parties' actions were a substantial factor in causing an identifiable

loss." *Id.* A trial court is "accorded significant leeway in ascertaining a fair approximation of the loss where, as here, a breach of fiduciary duty has been proved." *Keizman v Hershko*, 52 AD3d 204 (1st Dep't 2008); *see Wolf v Rand*, 258 AD2d 401, 402-403 (1st Dept 1999).

Plaintiffs claim that Vilar's breaches of his fiduciary duty to them was a "substantial factor" in causing the following losses: (1) the principal and interest accrued on loans secured by mortgages on their home in Yonkers, New York, and two condominiums in Puerto Rico, on which they have defaulted, and related costs and fees; (2) assets that they were forced to sell; and (3) travel expenses. The court credits Lisa Mayer's sworn statement, undisputed by defendants, that she and her sister had to borrow the money to pay their living expenses because of Vilar's fiduciary breach. Plaintiffs still must prove an identifiable "loss."

A.    *The Yonkers Home*

As to the February 15, 2006 consolidated $2,850,000 loan on the Yonkers home, plaintiffs have submitted proof of a foreclosure action filed July 14, 2008 after plaintiffs' March 1, 2008 default. That consolidated loan carried an interest rate of 6.475% per annum. Plaintiffs have also submitted a November 4, 2011 debt collection letter to plaintiffs seeking payoff of the consolidated loan by payment of the following amounts no later than November 15, 2011: $2,850,000 in principal; $632,025.56 accrued interest from February 1, 2008 ($244.01 per diem) to November 15, 2011; and $225,952.39 in additional fees and costs. Trial Exhs. 9-11. Plaintiffs also submitted sufficient evidence of legal fees incurred in defending against foreclosure in the total amount of $15,564.96. The court will award as damages the accrued interest and additional fees and costs.

B.    *The Condominiums in Puerto Rico*

5

Plaintiffs submitted appraisals done on the condos before obtaining loans, but they have not submitted any evidence of either the actual sale price obtained by the lenders at the noticed public auctions, or the amount of any deficiency judgment. Plaintiffs' obligations to pay back the principal of the loans and the credit lines, as well as the accrued interest, would have been reduced by whatever amounts the condos sold for at the foreclosure auctions. In addition, even if the condos sold for less than their appraised values, which is likely, without evidence of the sale prices, the court can not determine a monetary value for the loss of the condos.

However, the court has "significant leeway in ascertaining a fair approximation of the loss where, as here, a breach of fiduciary duty has been proved." *Keizman v Hershko*, 52 AD3d at 204. Although plaintiffs received the principal of the loans they claim were necessitated by Vilar's breach of fiduciary duty, their financial obligations to the lenders under the loans included more than repayment of the principal. Vilar's fiduciary breach was a substantial factor in plaintiffs' incurring those additional obligations, which included interest, costs and expenses. The court considers these additional obligations as damages, regardless of the condos' sale prices at the public auctions. Plaintiffs are entitled to judgment for whatever amount they have adequately proved with their submitted evidence, which is not rebutted due to defendants' default.

As to the $816,000 loan on L. Mayer's condo, plaintiffs have submitted the Judgment for: remaining principal of $812,532; interest (from April 16, 2008 default) at the annual rate of 6.875%; costs and legal expenses of $81,600 (10% of principal); and unspecified amounts for insurance and taxes. Trial Exh. 18. Plaintiffs have not shown the total amount of interest paid on this loan prior to default, so the court will award as damages interest from the default date at

6

the per diem rate of $153.05 ($812,532 x 6.875% /365), until July 6, 2009, the date noticed for public auction. The court also awards the $81,000 in costs and legal expenses.

As to the credit lines, L. Mayer has submitted the August 14, 2008 Judgment for: remaining principal of $23,274.76 and $22,760.11, respectively; interest as of August 17, 2007 of $591.86 and $574.12, respectively; additional unspecified interest from that date; plus costs, expenses and legal fees totaling $10,000. The November 18, 2008 Judgment Execution Demand seeks execution of the Judgment by sale of the condo at public auction, but plaintiffs have not submitted evidence of that sale. The court awards the adjudged interest of $1,165.98 and the $10,000 in costs, expenses and legal fees.

As to the $768,750 loan on D. Mayer's condo, plaintiffs have submitted the Notice of Public Auction (Trial Exh. 30A) referring to a Judgment for: remaining principal of $765,483.63 "since June 1, 2007"; interest at the annual rate of 6.875%; costs and legal expenses of $76,875 (10% of principal); and unspecified amounts for insurance and taxes. Plaintiffs have not submitted the actual Judgment, evidence showing whether the date June 1, 2007 is the date of default or of the Judgment, or the total amount of interest paid on this loan prior to the Judgment. Nonetheless, the court will award as damages the interest from June 1, 2007 at the per diem rate of $144.18 ($765,483.63 x 6.875% /365), until July 6, 2009, the date noticed for public auction. The court also awards the $76,875 in costs and legal expenses.

C.    *Additional Expenses and Assets*

Plaintiffs are entitled to damages for losses in the amount of $1,293,220 from the sale of their father's life insurance policy and the surrender of their own policies. They established that Vilar's breach of fiduciary duty was a substantial factor in causing them to incur these losses for

7

the purpose of paying their living expenses.  Plaintiffs have also established that they incurred

the travel expenses because of Vilar's fiduciary breach.  However, plaintiffs have not established

that the amounts they received on the sale of additional assets were less than the value of those

assets today.   Accordingly, it is

ORDERED that the court's order staying execution of judgment in this action is hereby

dissolved, and that plaintiffs may execute on the judgment; and it is further

ORDERED that the Clerk is directed to enter a supplemental judgment for plaintiffs as

set forth below, which shall be in addition to the money judgment entered on October 28, 2011

for plaintiffs on their First Cause of Action in the amount of $19,133,299.78; and it is further

ORDERED and ADJUDGED that the Clerk shall enter judgment in favor of plaintiffs

and against defendant Alberto Vilar in the amount of $2,336,403.89, together with per diem
*in the sum of $68,443.35*

interest of $153.05 from April 16, 2008 to July 6, 2009, and per diem interest of $144.18 from
*in the sum of $110,586.06*

June 1, 2007 to July 6, 2009, and with interest at the statutory rate from the date of this decision,
*2,530,909.21 X*

as calculated by the Clerk, in the amount of $ _15,505.91_ , for a total of $ _____ , to be

taxed by the Clerk; and it is further

ORDERED and ADJUDGED that the Clerk shall enter judgment in favor of plaintiffs

and against defendants Amerindo Investment Advisors, Inc. (U.S.) and Amerindo Investment

Advisors, Inc. (Panama), in the sum of $446,168.79, with interest at the rate of 9% per annum

from June 30, 2004 to the date of this decision and thereafter at the statutory rate, as calculated
*$313,320.51                     759,489.30            X*

by the Clerk, in the amount of _____ , for a total of $ _____ , to be taxed by the

Clerk; and it is further

ORDERED and ADJUDGED that the Clerk shall enter judgment in favor of plaintiffs

and against defendants Amerindo Investment Advisors, Inc. (U.S.) and Amerindo Investment

Advisors, Inc. (Panama), shall transfer and deliver to plaintiffs 243,902.43 shares of Intouch, Inc.

Series A Preferred stock, and shall execute any and all documents required to effect any of the

aforesaid conveyances; and it is further

ORDERED that the Clerk shall enter judgment accordingly, with costs to plaintiff upon

presentation of a bill of costs.

ENTER:

_____
J.S.C.

Dated: March 23, 2012

Plaintiffs (creditors)
1) Lisa Mayer
2) Debra Mayer
3) Daba, Inc. and
4) ABA, Inc.,
71 Malvern Road,
Yonkers, NY

Defendants (debtors)
1) Alberto Vilar
Federal Correction Institution, Fort Dix
Fort Dix, NJ

2) Amerindo Investment Advisors, Inc (U.S.)
3) Amerindo Investment Advisors, Inc (Panama)
399 Park Avenue,
New York, NY

Norman Goodman
Clerk

FILED   as a Judgment

APR 17 2012

COUNTY CLERK'S OFFICE
NEW YORK

9

See Affirmation of Patrick W. Begos waiving costs and
disbursements dated 4/17/12. nsy/48

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
LISA MAYER, DEBRA MAYER, DABA, INC. and          :     Index No. 603234/04
ABA, INC.,                                        :     Cal No. 2010L-03390
                          Plaintiffs,             :
                                                  :     IAS Part 54
            – against –                           :     (Hon. Shirley W. Kornreich)
                                                  :
ALBERTO VILAR, GARY TANAKA, AMERINDO             :
INVESTMENT ADVISORS, INC. (U.S.), AMERINDO       :
INVESTMENT ADVISORS, INC. (PANAMA),              :
                                                  :
                          Defendants.             :
-------------------------------------------------------------------x

**Affirmation of Patrick W. Begos Waiving Costs and Disbursements**

PATRICK W. BEGOS, an attorney licensed to practice in the courts of this State, affirms the

following to be true under penalty of perjury:

1.     I am a member of the firm Begos Horgan & Brown LLP ("BHB"), attorneys for

plaintiffs in this action. I submit this affirmation waiving taxation of costs and disbursements with

respect to the March 23, 2012 Decision, Order and Supplemental Judgment.

Dated:     April 17, 2012

_____
Patrick W. Begos

**FILED**

APR 17 2012

COUNTY CLERK'S OFFICE
NEW YORK

## AFFIRMATION OF SERVICE

PATRICK W. BEGOS, an attorney licensed to practice before the Courts of the State of New York, affirms the following to be true under penalty of perjury:

1.     I am not a party to this action and I am over 18 years of age.

2.     On April 18, 2012, I served the within Notice of Entry of Supplemental Judgment by causing true copies thereof, in properly sealed, post-paid wrappers, to be deposited in an official depository under the exclusive care and custody of the U.S. Postal Service, addressed to:


ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK PC
Attorneys for Alberto Vilar
875 Avenue of the Americas
New York, NY 10022

GARY TANAKA
FCI Terminal Island
P.O. Box 3007
San Pedro, CA 90731

HELLER EHRMAN LLP
Attorneys for Amerindo Investment Advisors, Inc. (U.S.) (defaulted)
c/o Kevin J. Toner, Esq.
Patton Boggs LLP
1185 Avenue of the Americas
New York, NY 10036

Dated:      April 18, 2012

_____
Patrick W. Begos
Begos Horgan & Brown LLP
7 Pondfield Road
Bronxville, NY 10708-0369
(914) 961-4441

EXHIBIT C

**BEAR STEARNS**
**Institutional Account Agreement**

| Title: | *Amerindo Technology Growth Fund II, Inc* |
| Account Number: | *102 - 01495* |
| Dated as of: | *3/6/02* |

This agreement *("Agreement")* sets forth the terms and conditions under which Bear, Stearns & Co. Inc., Bear, Stearns Securities Corp. and their Affiliates (as defined in Paragraph 3 below) will open and maintain account(s) (including, but not limited to, the account specified above) in your name, engage in Activities (as defined in Paragraph 3 below) and otherwise transact business with you.

**1.   Parties.**  You hereby agree that the parties to this Agreement shall consist of you and each of the Bear Stearns entities listed on the signature page hereof and each of their Affiliates at which you open an account or accounts, with which you otherwise transact business or with which you engage in an Activity, whether listed or not herein (which shall automatically become a party hereto by virtue thereof), which entities are referred to herein individually and collectively as a *"Bear Stearns entity", "Bear Stearns", "us", "our"* or *"we"*.

**2.   Applicable Law and Regulations.**  All Activities shall be subject to all applicable laws, rules and regulations, and to the applicable provisions of the constitution, rules and customs of the exchange or market (and clearing house) where executed and of governing self regulatory bodies.

**3.   Security Interest and Lien**  You hereby grant to each Bear Stearns entity a valid and first priority, perfected, continuing security interest in and assign (a) all property now or hereafter held or carried by any Bear Stearns entity in any of your accounts, all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Bear Stearns entity and all property held or otherwise subject to the control of any Bear Stearns entity or agent thereof, including (without limitation) all margin, securities, monies. and investment property (including without limitation all financial assets and instruments), (b) all rights you have in any Obligation (as defined in Paragraph 3 below) of any Bear Stearns entity, (c) any and all rights, claims or causes of action you may now or hereafter have against any Bear Stearns entity (including without limitation all rights you have in any repurchase agreement to which any Bear Stearns entity is a party) and (d) all proceeds of or distributions on any of the foregoing (collectively (a) through (d), *"Collateral"*), as security and margin for the payment and performance of any and all of your Obligations to each Bear Stearns entity; provided, however, that Collateral pledged by you in connection with a particular Activity shall secure first your Obligations with respect to that Activity and, second, your Obligations with respect to all Activities, provided further, that Bear Stearns' security interest in any rights you may have under a Master Agreement (as defined below) shall be limited to your right to receive the net amount due to you (if any) under the close-out and netting provisions of such Master Agreement following the occurrence of an event of default or early termination event (however defined) under such Master Agreement.  The description of any property that is Collateral with respect to any Activity, including, but not limited to, Collateral described in any confirmation, account statement, or Activity Report (as defined in Paragraph 8 below), is hereby incorporated into this Agreement as if fully set forth herein and constitutes Collateral hereunder.

You and each Bear Stearns entity, hereby acknowledge and agree, for the benefit of each Bear Stearns entity, that all Collateral is held as Collateral by each Bear Stearns entity for itself, and, as agent and bailee for all other Bear Stearns entities.  Each Bear Stearns entity agrees to act as agent and bailee of and for each other Bear Stearns entity in respect of the Collateral and shall hold any Collateral both as secured party and as agent and bailee of and for each other Bear Stearns entity.  Each Bear Stearns entity, shall and hereby agrees to, and you agree that it may, comply without your further consent, with any orders or instructions of each other Bear Stearns entity with respect to the Collateral, including (without limitation), (a) any entitlement orders or other instructions, including without limitation, all notifications it receives directing it to transfer (including, without limitation, to a Bear Stearns entity) or redeem any Collateral and (b) if the Bear Stearns entity is a commodity intermediary, any instructions to such Bear Stearns entity to apply any value distributed on account of a commodity contract as directed by each other Bear Stearns entity.  Each Bears Stearns entity has the right, in its sole discretion, to not comply with (i) any entitlement order or other instructions originated by you or a third party that would require a Bear Stearns entity to make a delivery of Collateral to you or any other person and (ii) any instruction from you to apply any value on account of any commodity contract (whether such value is distributable or not), to the extent that such Collateral is necessary to satisfy any Obligation (including, without limitation, any requirement for margin or other security) to itself or any Bear Stearns entity if such other Bear Stearns entity requests (orally or in writing, itself or through an agent) that such entitlement order or instruction not be complied with. You agree that the actions of a Bear Stearns entity in not complying with your instructions as allowed in this Paragraph 3 satisfy any duties we may have under the Uniform Commercial Code.  This Paragraph 3 shall survive the termination of this Agreement, thereby extending the right to any lien and security interest until such time as, in the sole discretion of Bear Stearns, security for the repayment of your Obligations in no longer required.

Each Activity has been entered into in consideration of each other Activity and your performance of each and every one of your Obligations when due is a condition precedent to Bear Stearns' performance of its Obligations; provided, however, that Activities shall not be merged.  In furtherance of the foregoing, any Bear Stearns entity may, at any time and without prior notice to you, use, credit, apply or transfer any such Collateral (or make other arrangements) at, or with respect to any Obligation to, any Bear Stearns entity to satisfy or secure any of your Obligations.

*"Activity(ies)"* means all transactions, agreements, loans, promises of performance, open contractual commitments, Loans (as defined in Paragraph 4 below), Clearing Transactions, guaranties and extensions of credit between Bear Stearns acting as either principal or agent on your behalf and you, whether arising hereunder, heretofore or hereafter.

*"Affiliate"* (when used with respect to a Bear Stearns entity) shall include each trust, limited liability company, corporation, partnership and any other entity which is owned directly or indirectly by one or more of the Bear Stearns entities listed on the

signature page, or which is controlled by or under common control with one or more of the Bear Stearns entities listed on the signature page, whether such entity exists as of the date hereof or is hereafter created or acquired.

*"Clearing Obligation"* means each and every obligation of any Bear Stearns entity to you and from you to any Bear Stearns entity in connection with any Clearing Transaction, or its acceleration, cancellation, termination or liquidation, whether arising hereunder, heretofore or hereafter or whether fixed, liquidated or contingent.

*"Clearing Transactions"* means all actions and agreements relating to the clearance or settlement of transactions in securities, currencies or commodities for you and all transactions in which any Bear Stearns entity provides clearing, special clearing or settlement services to you (including, without limitation, as prime broker in connection with prime broker transactions or in connection with any give-up, free delivery, or when acting as a securities clearance and/or settlement agent in any clearing system, market, or exchange, domestic or international).

*"Master Agreement"* means any November 1995 version, 2000 version or any later version of The Bond Market Association / International Securities Market Association Global Master Repurchase Agreement, any Overseas Securities Lender's Agreement or Global Master Securities Lending Agreement of the International Securities Lending Association, any ISDA Master Agreement and any similar industry form which contains close-out and netting provisions and in each case which is governed by English law and which is entitled to the benefits of a netting opinion and which is entered into between you and Bear Stearns.

*"Obligation(s)"* means each and every obligation or liability you owe to Bear Stearns or Bear Stearns owes to you (as the context requires) including, without limitation, payment and delivery obligations, any Clearing Obligation, any obligation or requirement you have hereunder to liquidate or otherwise reduce a position, account or Activity, any "debt" as defined in the United States Bankruptcy Code *(the "Code")*, any obligation arising under a guarantee or indemnity that you have provided to a Bear Stearns entity and every obligation or requirement you have under any Activity to maintain or deliver Collateral with respect to such Activity (whether or not performance is due) or its acceleration, cancellation, termination or liquidation, or in connection with a guarantee, whether arising hereunder, heretofore, or hereafter and whether fixed, matured, unmatured, liquidated, unliquidated or contingent.

You agree that with respect to Collateral and the delivery of Collateral, you will take such action as is necessary to cooperate with Bear Stearns, and you hereby irrevocably appoint each Bear Stearns entity to be your attorney in fact and your agent (*"attorney"*) (with full powers of substitution and delegation) to act in your name and on your behalf and as your act and deed or otherwise under a power coupled with an interest to execute, sign, seal, deliver, lodge and file any documents which such Bear Stearns entity may require for perfecting or preserving its security interest in the Collateral that you have delivered, or, upon the occurrence of a Default (as defined below), vesting the Collateral in the Bear Stearns entity, and otherwise generally to sign, seal and deliver and otherwise perfect and preserve any such legal or other mortgage, charge, security interest or assignment and all such deeds and documents and to do all such acts and things as may be required for the full exercise of the powers

hereby conferred including, but not limited to, executing and filing any financing statements and charges, and upon the occurrence of a Default, executing and filing such documents as are appropriate to effect any sale, lease, liquidation, disposition, realization, receipt of such Collateral or the enforcement of any of the Bear Stearns entity's rights hereunder. You hereby covenant with us to ratify and confirm any deed, document, act and thing and all transactions that any such attorney or agent may execute or do to perfect or preserve its security interest and that you will not take any action that would impair a Bear Stearns entity's perfected security interest in Collateral.

You represent and covenant that (a) you have the right to pledge and assign to Bear Stearns the Collateral pledged and assigned hereunder; (b) the Collateral is free and clear of any liens, claims or encumbrances, except in favor of a Bear Stearns entity; (c) upon your delivery of the Collateral or such other actions as shall have been taken on or prior to the pledge thereof, this Agreement will create, as security for your Obligations, a valid and perfected first priority security interest in all Collateral pledged by you; (d) if required, you will promptly note in your register of mortgages and charges the security interest created by this Agreement over your property and no further filings, registrations, licenses, recordings or consents of or with any governmental body, agency or official are necessary to create, preserve or perfect our security interest in all such Collateral (other than UCC financing statements or charges which may be required) and (e) any guarantee provided by you to any Bear Stearns entity shall continue to be effective or be reinstated (as the case may be) if at any time all or any part of any payment or interest or other performance by the obligor under such guarantee is avoided or is otherwise restored or repaid by any Bear Stearns entity. You agree that you shall not sell, assign or transfer the Collateral, issue orders or otherwise dispose of the Collateral if a Default has occurred and is continuing or to the extent that such Collateral is necessary to satisfy an Obligation to a Bear Stearns entity (including, without limitation, any requirement for margin or other security) or create or permit to exist any lien, claim or encumbrance (other than the security interest created hereby or in favor of a Bear Stearns entity) upon the Collateral. Nothing herein shall be construed as a requirement that a Bear Stearns entity cause Collateral which is held on account of a particular Activity to be attributed (in whole or in part) to any other Activity in determining whether a Bear Stearns entity is entitled to make a demand or call upon you for additional securities, monies or other property under any other Activity, or to preclude any Bear Stearns entity from making a demand or call upon you for additional securities, monies or other property.

You waive marshalling of assets and any similar doctrine dealing with the application of collateral. Subject to the terms of this Agreement, Collateral may be utilized or applied by Bear Stearns entities as they determine.

You agree that your execution of this Institutional Account Agreement shall constitute notice to each Bear Stearns entity of the security interest you have granted to each other Bear Stearns entity herein, and each Bear Stearns entity holding Collateral is on notice of the security interest granted to each other Bear Stearns entity.

**4. Loans.** We may from time to time lend you money or extend you credit in connection with the purchase or sale of securities or Activities *(a "Loan")*. Each Loan shall be considered an Activity under this Agreement. We shall agree with you from time to time upon the terms of each Loan, including the rate of interest payable by you in respect of any such Loan. Any debit balances in connection

with any Activity, including any Loan, are repayable immediately upon demand.

**5. Deposits on Activities; Margin; No Obligation.** Whenever Bear Stearns, in its discretion, considers it necessary for its protection, it may require you and you hereby agree to immediately (a) deposit cash or required property in your account(s) prior to any applicable settlement date in order to assure due performance of your open contractual commitments, and (b) deposit such margin and provide such additional margin (unless otherwise agreed in writing) as Bear Stearns may require. Immediately upon your failure to do any of the foregoing, whether with or without further demand, call or notice, Bear Stearns shall be entitled to exercise all rights and remedies provided in Paragraphs 3 and 6 hereof. No demands, calls, tenders or notices that Bear Stearns may have made or given in the past in any one or more instances shall constitute a requirement that Bear Stearns make or give the same in the future. Margin calls made by Bear Stearns may be communicated orally and need not be confirmed in writing.

For purposes of determining whether or not to require margin in connection with an Activity, the market value of all Collateral shall be determined by Bear Stearns, in its sole discretion. Notwithstanding any provision to the contrary in this Agreement and any other agreement, the margin requirement hereunder and with respect to each Activity shall be an amount not less than the amount required by law, rule or regulation (including, without limitation, an applicable clearing house, self-regulatory organization, market or exchange rule or regulation). Unless otherwise agreed to the contrary at the initiation of an Activity, Bear Stearns, in its sole discretion, may decline to accept any property as margin. For the avoidance of doubt, Bear Stearns shall have no obligation to take into account Collateral held at a Bear Stearns entity in determining margin requirements or in making demands for margin with respect to Activities at any other Bear Stearns entity.

You agree that Bear Stearns does not, by entering into this Agreement, obligate itself to enter into Activities with you. Rather Bear Stearns, in its sole discretion, may choose which Activities, if any, it wishes to enter into with you. You further agree that the refusal by Bear Stearns to enter into an Activity with you shall not operate as a termination of this Agreement.

Bear Stearns, in its sole discretion, may set the maximum aggregate amount of all Obligations you may owe to Bear Stearns and, in its sole discretion, may, from time to time, set aggregate maximum amounts of assets, positions or Activities that may be held by you with, or through Bear Stearns. Upon notification by Bear Stearns, you will liquidate, or otherwise reduce, the amount of such positions, accounts or Activities that exceed the respective maximum set by Bear Stearns. You agree that upon your failure to liquidate such amounts, Bear Stearns may immediately do so on your behalf and/or may treat your failure to liquidate or otherwise reduce assets, positions or Activities as a Default hereunder.

**6. Default; Remedies.** Each of the matters provided for in (a) through (g) below, shall be referred to as a "*Default*": if (a) (i) you are dissolved or become insolvent, (ii) you make a general assignment for the benefit of, or enter into a reorganization, arrangement, or composition with creditors, (iii) you become generally unable, fail or admit orally or in writing your inability to pay your debts or perform your obligations or Obligations as they become due, (iv) you seek, consent to, acquiesce in or become subject to the appointment of any

trustee, rehabilitator, administrator, receiver, liquidator or analogous officer of you or any material part of your property, (v) there is presented or filed in respect of you or you file a petition in any court or before any agency alleging or for your bankruptcy, winding-up or other insolvency (or other analogous proceeding) or seeking any reorganization, arrangement, composition, re-adjustment, administration, liquidation, dissolution or similar relief under any statute, law or regulation, (vi) a resolution for your winding up, official management or liquidation is passed, (vii) a secured party takes possession of all or substantially all of your assets or levies, enforces or issues on or against any of your assets, a distress, execution, attachment, sequestration or other legal process, (viii) you cause or become subject to any event that, under the applicable laws of any jurisdiction, has an analogous effect to any of the events specified in clauses (i) to (vii) or (ix) you take any action in furtherance of any of the foregoing acts; (b) you breach repudiate or default under or in connection with any Activity, including, but not limited to, your failure or unwillingness or your oral or written statement of your inability or unwillingness to meet a margin call (including, without limitation, any increase in margin or Collateral requirements) or any other Obligation hereunder; (c) we reasonably believe that we may not be able, without delay, to apply Collateral or set off our Obligations against your Obligations; (d) an event, circumstance or condition occurs that, in our judgment, materially impairs your creditworthiness or ability to perform your Obligations or otherwise causes us to view ourselves as insecure; (e) any of your representations or warranties shall have been untrue in any material respect when made or deemed repeated; (f) a party who has guaranteed any of your Obligations to any Bear Stearns entity (a "*Guarantor*"), fails to perform under the guarantee or a Default occurs with respect to Guarantor or (g) you fail to perform under a guarantee you provided to any Bear Stearns entity. If a Default occurs, then, without notice, each and any Bear Stearns entity, at its option, may: (A) consider and declare you in default of any and all Activities with such Bear Stearns entity; (B) in whole or in part, accelerate, cancel, terminate and liquidate or otherwise close out any Activity with you; (C) set off, net, and/or recoup a Bear Stearns entity's Obligations to you against any of your Obligations and each Bear Stearns entity's Obligations shall automatically be reduced first by the amount of all of your Obligations to it and then by your Obligations to other Bear Stearns entities, unless, and to the extent, we determine otherwise; and you expressly waive any requirement of mutuality to allow one Bear Stearns entity to set off, net or recoup against any Obligation of a different Bear Stearns entity to you; (D) retain any Collateral and withhold payment and performance of any Obligation to you to pay, secure, set-off against, net and/or recoup any Obligation you owe to a Bear Stearns entity; (E) foreclose, collect, sell or otherwise liquidate any Collateral a Bear Stearns entity selects in its reasonable discretion, in any order and at any time, and apply the proceeds thereof to satisfy any of your Obligations; (F) buy any and all property that may have been sold short; (G) in each Bear Stearns entity's reasonable discretion, convert any Obligation from one currency into another currency; (H) take any other action permitted by law or in equity or by any Activity necessary or appropriate to protect, preserve or enforce our rights or to reduce any risk to us of loss or delay. At any sale of Collateral or other sale or purchase permitted hereunder or otherwise, Bear Stearns may sell or purchase to or from itself or third parties; and the parties hereto acknowledge and agree that the securities subject to such sale or purchase are instruments traded in a recognized market. You shall be liable to the extent permitted by law for interest on any amount not paid when due for the period from the due date thereof to the date of payment at a rate equal to the higher of (i) the Prime Rate in effect

from time to time and (ii) the highest rate applicable to any defaulted Activity, plus in either case 2%. *"Prime Rate"* shall mean the prime rate of U.S. money center commercial banks as published in the Wall Street Journal. You agree that Bear Stearns may liquidate Collateral in such manner as it determines in its sole discretion and that it has no obligation to liquidate any Collateral within any particular time or in any particular manner. You will be liable to such Bear Stearns entity for any damage, loss, cost and expense incurred, including any damage, loss, cost and expense that (x) is incurred to put it in the same economic position as it would have been in had a Default not occurred, including any attorney's fees, interest, damage, loss, cost and expense that arises out of any other commitment it has entered into in connection with or as a hedge in connection with the Activity or in an effort to mitigate any resulting loss to which it is exposed because of a Default or (y) is connected with any claim against a Bear Stearns entity that relates to your Default, or a claim made by you or in your right pertaining to any action or inaction taken or omitted by us after your Default.

#### 7.  Fees and Charges; Account Related Costs; Indemnification.
You understand that Bear Stearns may charge commissions and other fees for execution, clearing, custody or any other service furnished to you, and you agree to pay such commissions and fees at Bear Stearns' then-prevailing rates. You understand further that such commissions and fees may be changed from time to time, upon prior written notice to you. You will pay any applicable value added tax and such other taxes, duties and fees as are applicable to Activities entered into by you. If you are required by law to make any deduction or withholding from any payment due under any Activity or hereunder, you shall pay to us simultaneously with making such payment an additional amount as may be necessary in order for the total amount received by us after all deductions and withholdings to be equal to the amount which we would have received had no deduction or withholding been made.

The fees payable by you and the transaction charges incurred by you shall be paid daily by automatic deduction from your accounts, unless otherwise agreed in writing. Out-of-pocket expenses incurred by Bear Stearns in the performance of its services hereunder, and all other proper charges and disbursements in connection with your Activities shall be paid by you and may be deducted by Bear Stearns from your accounts. Any and all taxes, including any interest and penalties with respect thereto, which may be levied or assessed under present or future laws upon or in respect to your accounts, Activities or upon or in respect of income thereof shall be paid by you and may be deducted by Bear Stearns from your accounts.

You hereby agree to indemnify and hold Bear Stearns harmless from and against any and all losses, claims, including, without limitation, claims asserted by third party brokers or dealers in connection with Clearing Transactions, damages, liabilities, obligations, penalties, judgments and awards, and to pay, on demand, all reasonable direct and indirect costs, liabilities and damages incurred by Bear Stearns (including, without limitation, costs of collection, attorneys' fees, court costs and other expenses) in connection with (a) your Obligations, (b) Clearing Transactions, (c) your breach of this Agreement, (d) enforcing its rights hereunder, (e) any investigation, litigation or proceeding involving your accounts, any property therein (including, without limitation, claims to such property by third parties) or any Activity, (f) your use of or access to any Bear Stearns or third-party system (excluding the ordinary costs of maintaining and using any such system) or (g) Bear Stearns' acting in reliance upon your instructions including, but not limited to, instructions transmitted via facsimile by you or your authorized agents or, if your account is

introduced to Bear Stearns by another broker, the instructions of such other broker ((a) through (g), *("Costs")*. In each case, whether or not demand has been made therefor, you hereby authorize Bear Stearns to charge your account(s) for any and all such Costs. This indemnity shall survive the termination of this Agreement.

#### 8.  Confirmations and Account Statements.
Reports of trades executed with Bear Stearns, prime broker transactions, futures transactions and other Activities with you *("Activity Report(s)")* that have been provided or made available to you by 10:00 a.m. (New York time) on the business day immediately following the trade date shall be conclusive if not objected to in writing by 12:00 noon (New York time) on that day or, if such Activity Reports are provided or made available to you after 10:00 a.m. (New York time) on the business day immediately following the trade date, then no later than two hours after such reports have been provided or made available to you. Information contained in confirmations and account statements to the extent not included in such Activity Reports shall be conclusive if not objected to in writing within three days in the case of confirmations and ten days in the case of account statements, after such documents have been transmitted to you by mail or otherwise.

#### 9.  Debit Balances/Truth-in-Lending.
You hereby acknowledge receipt of Bear Stearns' Truth-in-Lending disclosure statement or any analogous disclosure statement. You understand that interest will be charged on any debit balances in your accounts in accordance with the methods described in such statement or in any amendment thereof or revision thereto which may be provided to you or at the rate provided for in Paragraph 6, if higher and not prohibited by applicable law. Any debit balance that is not paid at the close of an interest period will be added to the opening balance for the next interest period.

#### 10.  Introduced Accounts; Clearing Activities.
If any of your account(s) is introduced to Bear Stearns by a third party broker and is carried by any Bear Stearns entity as clearing agent for such broker, unless such Bear Stearns entity receives from you prior written notice to the contrary, we may accept and process from such other broker, without any inquiry or investigation: (a) orders for the purchase or sale of securities and other property in your account(s) on margin or otherwise and (b) any other instructions concerning your account(s) or the property therein. Bear Stearns also has the right, exercisable in its sole discretion, to refuse to accept orders, cancellations or any other instruction for your account and to require you to furnish any additional documentation we deem necessary. You understand and agree that Bear Stearns shall have no responsibility or liability to you for any acts or omissions of such broker, its officers, employees or agents.

If Bear Stearns at any time engages in Clearing Transactions for you, Bear Stearns may require you to maintain a deposit with respect to Clearing Transactions, which deposit shall constitute Collateral and margin hereunder. Bear Stearns may, from time to time, amend the amount of such Collateral requirements on notice to you.

If Bear Stearns engages in Clearing Transactions for you (a) you will notify Bear Stearns of the Details (as defined below) of the Clearing Transaction in accordance with the time schedule specified by Bear Stearns, from time to time, (b) you shall bear all the risks related to each Clearing Transaction, including but not limited to, non-performance by the third party, broker or dealer and (c) you will provide Bear Stearns and be responsible for the settlement payment (including, without limitation, the necessary securities,) to enable Bear Stearns to process, clear and settle the delivery of the securities

4

and cash related to such Clearing Transaction, and any cash or securities necessary to meet a demand for margin made by the third party dealer and (d) if Bear Stearns engages in Clearing Transactions for you in which Bear Stearns becomes obligated to settle a trade you have placed through another broker or dealer, you will be obligated to Bear Stearns for the settlement payment (including, without limitation, the necessary securities) to enable Bear Stearns to process, clear, and settle such Clearing Transaction no later than the time at which Bear Stearns becomes so obligated. The term "Details" shall mean the specific third party, broker or dealer, the department at the specific third party dealer, the purchase or sale/settlement date, the purchase or sale price, and in connection with a repurchase or reverse repurchase Clearing Transaction, the purchased securities, the pricing rate, and the repurchase date and any other information required for Bear Stearns to process, clear and settle such Clearing Transaction. Nothing contained herein shall be construed as imposing liability on any Bear Stearns entity as a principal party in connection with any Clearing Transaction in which it is acting as agent (which agency obligations are required to be performed in accordance with this Agreement) and you shall not under any circumstance represent to any third party broker or dealer or any entity that any Bear Stearns entity acts as a guarantor of any such Clearing Transaction.

You agree that you will only execute bona-fide orders, and if required for settlement, you will request a free delivery of cash or securities only when you have reasonable grounds to believe that the contra-party and the entity who executed your order have the financial capability to complete any contemplated transaction.

For the avoidance of doubt, you acknowledge and agree that Bear Stearns (a) reserves the right at any time to place a limit (of either dollars or number of securities) on the size of transactions that Bear Stearns will accept for clearance and (b) if you execute an order in excess of the limit established by Bear Stearns, Bear Stearns shall have the right, exercisable in its sole discretion, to decline to accept the transaction for clearance and settlement.

Bear Stearns will attempt to clear such securities transactions within a reasonable period as determined by it, in its sole discretion, and utilize the same procedures it utilizes when clearing transactions on behalf of other customers. If either you or the broker who executed your order fails for any reason to settle the transaction and/or return any free delivery within a reasonable period of time, as determined by Bear Stearns, you will be solely liable to Bear Stearns for any and all loss, including expenses, caused thereby. Bear Stearns shall have no liability whatsoever to you in any such circumstance.

Notwithstanding anything in this Agreement to the contrary, if Bear Stearns at any time engages in Clearing Transactions for you, you acknowledge and agree that Bear Stearns may decline to clear or settle any transaction if it determines, in its sole discretion, that such transaction poses unacceptable risk.. In addition, to the foregoing, Bear Stearns may terminate any and all clearing activities and relationships it has with you upon thirty (30) days' written notice to you, it being understood that declining to clear or settle a prime broker transaction or any other Clearing Transaction does not constitute a termination within the meaning of this sentence. No termination under this Paragraph shall affect your Obligations.

Notwithstanding Paragraph 12 of this Agreement, with respect to any Clearing Transaction, Bear Stearns may accept any instructions orally communicated. Bear Stearns shall incur no liability to you in acting

upon any oral instruction reasonably believed by Bear Stearns to have been properly made by you. If a written instruction confirming an oral instruction is not received by Bear Stearns prior to a transaction, it shall in no way affect the validity of the transaction authorized by such oral instruction or your authorization to effect such transaction. To the extent such oral instruction varies from any written confirming instruction, Bear Stearns shall advise you of such variance, but unless a confirming written instruction is timely received, such oral instruction shall govern. Written instructions to you from Bear Stearns shall include transmissions by or through facsimile (using the facsimile number listed below), central processing unit connection, on-line terminal and magnetic tape. Written instructions to Bear Stearns from you for the receipt, delivery or transfer of securities or funds between your accounts or to third parties may include facsimile transmission, Remote Clearance Instructions (as defined below) and Bulk Input Instructions (as defined below). Bear Stearns shall be entitled to conclusively assume that all written instructions, including facsimile transmissions, Remote Clearance Instructions and Bulk Input Instructions have been given by an authorized person, and Bear Stearns is hereby irrevocably authorized to act in accordance therewith. For purposes of this Agreement, "*Remote Clearance Instructions*" means instructions that are input via a remote terminal which is located on your premises and linked to Bear Stearns (whether directly or indirectly through Bear, Stearns Securities Corp.), and "*Bulk Input Instructions*" means instructions that are input by bulk input computer tape delivered to Bear Stearns by messenger or transmitted to Bear Stearns via such transmission mechanism as you and Bear Stearns shall agree upon from time to time. All instructions must be completed in accordance with our requirements, as established from time to time, as to the content of instructions and their manner and timeliness of delivery.

**11. Impartial Lottery Allocation.** In the event Bear Stearns holds on your behalf bonds or preferred stocks in street name or bearer form which are callable in part, you agree that you will participate in the impartial lottery allocation system of the called securities in accordance with the rules of the New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account with respect to which Bear Stearns has actual knowledge that its officers, directors or employees have any financial interest until all other customers are satisfied on an impartial lottery basis.

**12. Waiver, Assignment and Notices.** Neither Bear Stearns' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Bear Stearns of any of its rights or privileges hereunder. Any assignment of your rights and Obligations hereunder or interest in any property held by or through Bear Stearns without obtaining the prior written consent of an authorized representative of Bear Stearns shall be null and void. Each Bear Stearns entity shall have the right to assign any of its rights and Obligations hereunder to any other Bear Stearns entity without prior notice to you; provided, however, that if you object within five days of notice (which notice need not precede the transfer), the transferring Bear Stearns entity shall remain obligated for any performance default by the transferee Bear Stearns entity.

Any notices, demands, or other communications from you to Bear Stearns under this Agreement shall be written, addressed to Bear Stearns, 245 Park Avenue, New York, New York 10167, Attention: Senior Managing Director, Global Credit Department or such other address of which we give you written notice and shall be effective

upon actual receipt by Bear Stearns at such address. Notwithstanding the foregoing, all notices from you to Bear Stearns Global Lending Limited shall be addressed to: Bear Stearns Global Lending Limited, c/o Director of Operations, Bear, Stearns International Limited, One Canada Square, London E14 5AD, England. You hereby authorize Bear Stearns to accept facsimile copies of this or any other document or instruction as if it were the original and to accept signatures on facsimiles as if they were originals.

Notices, demands, or other communications ("Notices") to you under this Agreement and under all Activities will be delivered, transmitted or mailed to the address, telephone or facsimile number contained in the records on which Bear Stearns customarily relies, unless and until three business days after Bear Stearns has received written notice from you of a different address or telephone or facsimile number. Notices to you shall be deemed received when properly addressed (a) three (3) days after mailing postage prepaid or (b) the day delivered if personally delivered or sent by overnight courier. Notices given to you by facsimile transmission shall be deemed received during normal business hours of the recipient when the transmitting facsimile signals the successful transmission of the facsimile during such normal business hours. Notices given to you by telephone shall be deemed received when Bear Stearns calls by telephone the person authorized to receive telephone notices listed below at the telephone number listed below unless otherwise provided under any Activity.

**13. Free Credit Balances.** You hereby authorize Bear Stearns to use any free credit balance awaiting investment or reinvestment in any of your accounts in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Bear Stearns for such accounts and for the amounts of cash so used. In accordance with applicable regulations, free credit balances are carried in customers' accounts pending, and with a view towards, reinvestment. Bear Stearns may determine not to pay interest on free credit balances representing either (i) uncollected funds or (ii) funds that are deposited and subsequently withdrawn prior to the expiration of the minimum time period required by Bear Stearns.

**14. Restrictions on Account.** You understand that Bear Stearns, in its discretion, may restrict or prohibit trading of securities or other property in any of your accounts.

**15. Extraordinary Events.** In no event shall Bear Stearns be liable for (a) any cost or delay caused, directly or indirectly, by war, riots, civil commotion, strikes, labor disputes, government acts, laws or regulations, exchange or market rulings, suspension of trading, embargoes, natural disasters, electrical failures, telephone communication line failures, computer failures, unavailability of the Federal Reserve Bank wire or telex or other wise or communication facility or any other cause of contingency beyond Bear Stearns' control that may prevent or delay the performance of any Bear Stearns' Obligations; or (b) any damages caused, directly or indirectly, by your introducing or executing broker, by erroneous information received from you or by your failure to deliver instructions, including, without limitation, a failure which results in a lack of position or a failure to exercise rights on your behalf.

**16. Credit Information and Investigation.** You authorize Bear Stearns and, if applicable, your broker, in its or their discretion, to make and obtain reports concerning your credit standing and business conduct. You may make a written request within a reasonable period

of time for a description of the nature and scope of the reports made or obtained by Bear Stearns.

**17. Short and Long Sales.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "short". In placing any sell order for a long account, you will designate the order as such and hereby authorize Bear Stearns to mark the order as being "long." The designation of a sell order as being for a long account shall constitute a representation that you own the security with respect to which the order has been placed, that such security may be sold without restriction in the open market and that, if Bear Stearns does not have the security in its possession on account for you at the time you place the order, you shall deliver the security by settlement date in good deliverable form or pay to Bear Stearns any losses or expenses incurred by it as a result of your failure to make delivery on a timely basis.

**18. Consent to Loan or Pledge of Securities.** To the greatest extent permitted under applicable law and regulations, you hereby authorize Bear Stearns to lend either to itself or to others any securities which constitute Collateral hereunder together with all attendant rights of ownership, and to use all such property as collateral for Bear Stearns' general loans or other obligations or with respect to repurchase transactions. Any such property, together with all attendant rights of ownership, may be pledged, repledged, sold, hypothecated or rehypothecated or become subject to repurchase transactions either separately or in common with other property for any amounts due to Bear Stearns thereon or for a greater sum and may extend for periods longer than your Obligations, and Bear Stearns shall have no obligation to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, Bear Stearns may receive and retain certain benefits to which you will not be entitled. In certain circumstances, such loans or other use may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities.

**19. Standard of Care; No Advisory Role; Limitation of Liability.** Bear Stearns shall be held to a standard of reasonable care in carrying out its Clearing Obligations and Bear Stearns shall have no liability with respect to any breach of its Clearing Obligations which does not arise from willful misfeasance, bad faith or negligence on its part. The parties agree that the amount and type of your damages in respect of any failure by Bear Stearns to satisfy a Clearing Obligation shall be determined in accordance with Paragraph 24 of this Agreement, applying the substantive law of the State of New York. Bear Stearns shall be entitled to rely on and may act upon advice of counsel in all matters and shall be without liability for any action reasonably taken or omitted pursuant to such advice. Unless expressly agreed in writing to the contrary, Bear Stearns does not act as your advisor and has no duty or obligation to provide advice to you or to act on your behalf in the absence of your express instruction. You acknowledge and agree that you will not rely on Bear Stearns taking any action with respect to any account, position or other Activity.

You agree that, no Bear Stearns entity shall have any liability for any consequential, incidental, special, exemplary, punitive, or any similar damages and you hereby irrevocably and unconditionally waive any right you may have to claim or recover any such damages (even if you have informed Bear Stearns of the possibility or likelihood of such damages); and, that with respect to Clearing Transactions, Bear Stearns shall have no liability for any amount in excess of the fees

received by Bear Stearns in any month with respect to Clearing Transactions, the limitation and waiver in this Paragraph 19 being an inducement to Bear Stearns to enter into Activities with you.

**20. Agents; Sub-custodians.** (a) Bear Stearns may employ agents or subcontractors in the performance of its Obligations under this Agreement or any Activity. The appointment of any such agent or subcontractor pursuant to this Paragraph 20 shall not relieve Bear Stearns of any of its Obligations under this Agreement or any Activity. For the avoidance of doubt and notwithstanding the foregoing, no clearing organization, settlement systems customarily used to clear trades in the applicable security or transaction, depository, book entry system participant or entity which Bear Stearns employs based upon customary market practice such as the Federal Reserve Bank or any participant in the Federal Reserve System book-entry system, The Depository Trust Company, The Participants Trust Company, Euroclear, Sicovam and any other similar organization (each, a "Depository") shall be considered an agent or subcontractor of Bear Stearns and Bear Stearns shall have no liability for any loss or damage arising out of the insolvency, acts or omissions of any Depository used by it.

(b) Notwithstanding the foregoing, you further acknowledge that Bear Stearns may appoint sub-custodians, including its own Affiliates, of assets held by or through Bear Stearns in your accounts. Anything in subparagraph 20(a) of this Agreement to the contrary notwithstanding, Bear Stearns will exercise reasonable skill, care and diligence in the selection of any such sub-custodian and will be responsible to you for satisfying itself as to the ongoing suitability of such sub-custodian to provide custodial services, will maintain an appropriate level of supervision over such sub-custodian and will make appropriate inquiries periodically to confirm that the obligations of such sub-custodian continue to be competently discharged. Bear Stearns will only be liable for loss or damage (subject to the limitations in Paragraph 19 above) arising out of the insolvency, acts or omissions of any sub-custodian appointed by it that is an Affiliate, but shall not be liable for any such loss or damage arising out of the insolvency, acts or omissions of any sub-custodian appointed by it that is not an Affiliate provided Bear Stearns has exercised reasonable skill, care and diligence in selecting such non-Affiliate sub-custodian.

**21. Legally Binding; Termination.** The provisions of this Agreement shall survive termination of this Agreement insofar as they relate to Obligations, Activities, actions or failures to take action relating to, arising in or with respect to the period prior to termination of this Agreement. You and Bear Stearns hereby agree that this Agreement shall extend to and be binding upon all of the parties hereto (whether now existing or hereafter added) and their respective successors and permitted assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any instruction for your account was not in writing as may be required by the Statute of Frauds or any similar law, rule or regulation.

**22. Amendment.** You agree that Bear Stearns may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from or engaging in Activities with Bear Stearns, you will have indicated your acceptance of any such modification. If you do not accept any such modification, you must notify Bear Stearns thereof in writing and your account may then be terminated, but you will still be liable thereafter to Bear Stearns for all remaining Obligations. Otherwise, this Agreement may not be

waived or modified absent a written instrument signed by an authorized representative of Bear Stearns.

**23. Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the conflict of law principles thereof.

**24. Arbitration; Consent to Jurisdiction.**

(a)

     (i) ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

     (ii) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

     (iii) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

     (iv) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

     (v) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

BY SIGNING THIS AGREEMENT, YOU AND BEAR STEARNS AGREE THAT CONTROVERSIES ARISING UNDER OR RELATING TO AN ACTIVITY OR THIS AGREEMENT BETWEEN YOU AND BEAR STEARNS, ITS PREDECESSORS, AND ANY OF THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND ANY OF THEIR DIRECTORS, EMPLOYEES, OR ANY CONTROL PERSONS AND ANY OF THEIR AGENTS, WHETHER ARISING PRIOR TO, ON, OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY BINDING ARBITRATION. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE HELD ONLY AT THE FACILITIES OF, BEFORE AN ARBITRATION PANEL APPOINTED BY, AND PURSUANT TO THE RULES OF THE NEW YORK STOCK EXCHANGE, INC., THE AMERICAN STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. YOU MAY ELECT ONE OF THE FOREGOING FORUMS FOR ARBITRATION, BUT IF YOU FAIL TO MAKE SUCH ELECTION BY REGISTERED MAIL OR TELEGRAM ADDRESSED TO BEAR, STEARNS SECURITIES CORP., 245 PARK AVENUE, NEW YORK, NEW YORK 10167, ATTENTION: CHIEF LEGAL OFFICER (OR ANY OTHER ADDRESS OF WHICH YOU ARE ADVISED IN WRITING), BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM BEAR STEARNS TO MAKE SUCH ELECTION, THEN BEAR STEARNS MAY MAKE SUCH ELECTION. THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.
NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO

ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:

    (x)    THE CLASS CERTIFICATION IS DENIED;
    (y)    THE CLASS IS DECERTIFIED; OR
    (z)    THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.

SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

(b) Notwithstanding the provisions of subparagraph (a) above, either party may seek, in the U.S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York, any such temporary or provisional relief or remedy ("provisional remedy") provided for by the laws of the U.S. or the laws of the State of New York as would be available in an action based upon such dispute or controversy in the absence of an agreement to arbitrate. The parties acknowledge and agree that it is their intention to have any such application for a provisional remedy decided by the Court to which it is made and that such application shall not be referred to or settled by arbitration. No such application for a provisional remedy, nor any act or conduct by either party in furtherance of or in opposition to such application, shall constitute a relinquishment or waiver of any right to have the underlying dispute or controversy with respect to which such application is made settled by arbitration in accordance with subparagraph (a) above.

(c) With respect to any application for a provisional remedy and any application for judgment on an arbitration award, each party irrevocably (i) submits to the jurisdiction of the U. S. District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York, (ii) waives any objection which it may have at any time to the laying of venue of any proceedings brought in any such court, waives any claim that such proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such proceedings, that such court does not have any jurisdiction over such party, and (iii) consents to service of process by certified mail, return receipt requested, to the address provided for herein.

(d) You hereby irrevocably designate and appoint the individual or entity listed below as your authorized agent to receive service of process on your behalf in connection with any legal matters or actions or proceedings based upon, arising out of or relating in any way to any Activity or this Agreement. If for any reason said agent is unable to act as such, you will promptly notify Bear Stearns and within 30 days appoint an authorized agent acceptable to Bear Stearns.

**25. Severability.** If any provision hereof is or should become inconsistent with any present or future law, rule or regulation of any sovereign government or regulatory body having jurisdiction over the subject matter of this Agreement, such provision shall be deemed to be rescinded or modified in accordance with any such law, rule or regulation. In all other respects, this Agreement shall continue to remain in full force and effect.

**26. Headings.** The headings of the provisions hereof are for descriptive purposes only and shall not modify or qualify any of the rights or obligations set forth in such provisions.

**27. Telephone Conversations.** For the protection of you and Bear Stearns, and as a way of correcting misunderstandings, you hereby authorize Bear Stearns, at its discretion and without prior notice to you, to monitor and/or record any or all telephone conversations between you and any of Bear Stearns' employees or agents which may be used in connection with any dispute between the parties or in any other way related to this Agreement.

**28. Other Agreements; Additional Rights.** The rights and remedies granted herein to Bear Stearns are in addition to any other rights and remedies, and supersede any limitation on or any requirement or condition for the exercise of such rights and remedies that are inconsistent herewith, which arise under any other Activity you may have with any Bear Stearns entity (including, without limitation, any requirement that time elapse or notice be given after your failure to perform any Obligation or any other default under any Activity, prior to the exercise of remedies under such other Activity). With respect to matters other than rights and remedies, the provisions of this Agreement shall supersede any inconsistent provision of any other Activity to the extent that the subject matter is dealt with in this Agreement if and to the extent the provision of such other Activity would deny any Bear Stearns entity any benefit or protection it is afforded under this Agreement. With respect to inconsistent provisions regarding resolution of disputes, including provisions for submission to jurisdiction or with respect to arbitration, this Agreement shall govern. Notwithstanding the foregoing, any provision of any Activity in writing and binding on Bear Stearns which is inconsistent with this Agreement and which other Activity states expressly that it is to supersede this Agreement (a merger clause shall not in and of itself be deemed such an express provision), shall govern. Except as provided above, the terms of any other applicable Activity shall continue in full force and effect. The provisions of this Agreement shall supersede any prior Institutional Account Agreement entered into by and between you and Bear Stearns.

**29. Characterization of Transfers, Obligations and Payments.** You hereby acknowledge that each transfer of Collateral and each payment hereunder and under any Activity is a "margin payment", "settlement payment" and "transfer" within the meaning of Sections 101, 362 and 546 of the Code, and each Obligation hereunder and under any Activity is an obligation to make a "margin payment," "settlement payment" and "payment" within the meaning of Sections 101, 362 and 560 of the Code.

**30. Representations.** By signing this Agreement, you represent and covenant (and you will be deemed to have repeated each representation and covenant, at the time of entering into each Activity) that: (a) you will engage in all Activities as principal and accordingly, you will determine the appropriateness for you of such Activities and address any legal, tax or accounting considerations applicable to you; (b) you will provide us with monthly financial statements by the 20th day of the month following the end of each month and you will immediately notify Bear Stearns of any material change in your financial condition; (c) you are knowledgeable of and experienced in the risks of entering into Activities you engage in, are capable of evaluating the merits and risks of Activities and are able to

bear their economic risks; (d) you are authorized to enter into this Agreement and each Activity to which this Agreement relates and perform your obligations hereunder and thereunder and that the Agreement is a legal, valid, binding and enforceable Obligation of yours except as enforceability may be limited by bankruptcy, moratorium on payment of debt or other laws affecting the rights of creditors generally; (e) the person who is executing this Agreement on your behalf is duly authorized to sign this Agreement in its name; (f) no advice furnished by Bear Stearns shall form a primary basis for any decision by you, except as provided below in (g) and no amounts paid by you to Bear Stearns shall be attributable to any advice provided by Bear Stearns; (g) Bear Stearns is not a fiduciary or adviser with respect to you unless we have agreed otherwise in a written agreement under which we receive compensation specifically identified as consideration for Bear Stearns acting as a fiduciary or adviser; (h) unless you expressly advise Bear Stearns to the contrary, you hereby represent that you are not an affiliate (as defined in Rule 144(a)(1) of the Securities Act of 1933) of the issuer of any security held in any of your accounts and (i) at all times, none of your assets constitute, directly or indirectly, plan assets subject to the fiduciary responsibility sections of the Employee Retirement Income Security Act ("ERISA") and you covenant to notify Bear Stearns immediately, if at any time, any of your assets become subject to the fiduciary responsibility sections of ERISA and, upon Bear Stearns' request, to terminate any or all Activities if your assets become subject to the fiduciary responsibility sections of the Employee Retirement Income Security Act ("ERISA")

In addition, by signing this Agreement, you represent and covenant (and you will be deemed to have repeated each representation and covenant, at the time of entering into each Activity) that you shall not use the name of Bear Stearns nor make any disclosure with respect to our relationship with you including, without limitation, in any disclosure document. solicitation, marketing or advertising material, or in any filing, without our prior written consent.

**31. Guaranteed Accounts.** You acknowledge that if your account is guaranteed by a third party, we are under no obligation to seek recovery under any such guarantee or from any third party.

**32. ADDITIONAL REPRESENTATION BY BORROWERS FROM BEAR STEARNS GLOBAL LENDING LIMITED, BEAR, STEARNS INTERNATIONAL LIMITED AND OTHER NON-US AFFILIATES OF BEAR STEARNS.**

By signing this Agreement, you further represent that you are neither a United States person nor a foreign person controlled by or acting on behalf of or in conjunction with United States persons as those terms are used in connection with Regulation X and that you are not a U.S. borrower subject to Regulation X promulgated by the Board of Governors of the Federal Reserve System. You shall be deemed to have repeated this representation each time you borrow funds and undertake to promptly notify us in writing if you should hereafter become subject to Regulation X. A copy of Regulation X has been delivered to you for your reference.

**33. On-Line And Electronic Systems.** If you or any of your employees or agents access or use any internet site or on-line or other electronic system operated for or by us or any account access, trading, order entry or other services, systems, capabilities or market or other data or content available through any of the foregoing (each, an "Electronic Service"), you acknowledge and agree that such ELECTRONIC SERVICE IS BEING MADE AVAILABLE TO

YOU OR SUCH OTHER PERSON WITHOUT ANY WARRANTY WHATSOEVER, EITHER EXPRESS OR IMPLIED, and you agree that any such access or use will be solely at your own risk, and neither we nor any vendor or source will have any liability whatsoever relating to or arising out of any such access or use or any inaccuracies, errors, delays, omissions or other problems with or failures of any Electronic Service. Moreover, you agree that if you or any of your employees or agents are given any digital certificate(s), user name(s) and/or password(s) which may be required to access or use any Electronic Services (collectively, "User Code(s)"), (a) you shall take all necessary actions to preserve the confidentiality of such User Codes; (b) you shall restrict access to the User Codes to those persons who are duly authorized to act on your behalf; (c) you shall notify us immediately in the event any such User Code is lost, stolen or, the confidentiality of any such User Code has been compromised in any way or the authority of any person to act on your behalf has been revoked or limited; and (d) you are responsible for and will be bound by all statements made, orders entered, and instructions, trades, agreements, assents and consents communicated under any such User Code, to the same extent that the same was under your duly signed writing.

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**

**1. THE SECURITIES IN YOUR MARGIN ACCOUNT(S) AND ANY SECURITIES FOR WHICH YOU HAVE NOT FULLY PAID, TOGETHER WITH ALL ATTENDANT OWNERSHIP RIGHTS, MAY BE USED BY BEAR STEARNS AS MORE SPECIFICALLY SET FORTH IN PARAGRAPH 18 ABOVE; AND**

**2. THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 24.**

[Executed as a deed by and on behalf of:]

**INSTITUTIONAL CLIENT** *(please complete)*:

_Amerindo Technology Growth Fund II, Inc._
Name of Institution

_43 Upper Grosvenor Street_
Street Address

_London_
City

_England      W1X 9PG_
State and Zip Code

_011- 44207- 493 - 5158_
Facsimile Number

By: _____

_Gary Tanaka , Director_
Name and Title of Authorized Officer

Date: _3/6/02_

By: _____

9

Authorized Agent under Paragraph 24(d):

David Mainzer
Name

399 Park Avenue, NY, NY 10022
Address

(212) 371-6360
Telephone Number

The Bear Stearns Companies Inc., Bear, Stearns & Co. Inc., Bear, Stearns Securities Corp., Bear, Stearns International Limited, Bear Stearns Capital Markets Inc., Bear Stearns Capital Markets Inc. II, Bear Stearns Mortgage Capital Corporation, Bear, Stearns Funding, Inc., Bear Stearns Home Equity Trust, Bear Stearns N.Y., Inc., Bear Stearns Bank plc, Bear Stearns Global Asset Trading, Ltd., Bear Stearns Global Asset Holdings, Ltd., Bear Stearns Forex Inc., EMC Mortgage Corporation, Bear Stearns (Japan), Ltd., Bear Stearns Asia Limited and Bear Stearns Hong Kong Limited and any other Affiliate of a Bear Stearns entity that is a party hereto pursuant to Paragraph 1 hereof.

By:

Bear Stearns Global Lending Limited

By:

Rev 11/16/01-slc

10

## SUPPLEMENT TO INSTITUTIONAL ACCOUNT AGREEMENT
## REGARDING SPECIAL CLEARING TRANSACTIONS

The terms and conditions hereof (the "Supplement") shall supplement and become part of the Institutional Account Agreement (the "IAA") to which this Supplement is attached. Together, this Supplement and the IAA shall govern transactions referred to herein as "Special Clearing Transactions", each of which shall be deemed both a "Clearing Transaction" and an "Activity", as defined in the IAA. Capitalized terms used without definition herein shall have the meanings ascribed to them in the IAA.

1.     **Special Clearance; Trade Processing. Securities.**  Upon your request, Bear, Stearns & Co. Inc. itself or through its affiliate Bear, Stearns Securities Corp. or another Bear Stearns designee (any of the foregoing, "BSC") may, in its sole discretion, issue the letter attached hereto substantially in the form of Schedule I (the "Letter") to each of your trading counterparties that is approved by BSC (each, a "Counterparty" and each Clearing Transaction that is subject to a Letter shall be referred to herein as a "Special Clearing Transaction").

It is agreed that you shall be the party in interest for each Special Clearing Transaction entered into with a Counterparty pursuant to a Letter, and you shall bear any and all risks related to such Special Clearing Transaction, including but not limited to non-performance by a Counterparty.  Furthermore, you agree that you shall timely provide to BSC any securities or money required for BSC to complete such transaction and to satisfy any demand for margin made by a Counterparty on BSC in respect of a Special Clearing Transaction.

You agree to report all Special Clearing Transactions executed before 4:00 p.m. (New York time) to BSC's Special Customers Operations Support Desk within one hour of execution and all Special Clearing Transactions executed between 4:00 p.m. and 5:00 p.m. (New York time) to such desk within fifteen (15) minutes of execution. BSC may decline Special Clearing Transactions reported after such times.  Special Clearing Transactions executed and reported after 5:00 p.m. (New York time) may be processed the next business day.  You agree to be responsible for any costs associated with any fail resulting from late reporting, which may include a one day, 50 basis point surcharge to finance the Special Clearing Transaction and a $100 late fee.

2.     **Repurchase Transactions with Third Parties.**  If BSC and you have agreed and you request that BSC clear and settle repurchase transactions and/or reverse repurchase transactions that you may execute with third party dealers involving securities, you agree that: (a) each such repurchase and/or reverse repurchase transaction shall be deemed a "Clearing Transaction" and an "Activity", as defined in the IAA, (b) you will notify BSC of the Details (as defined below) of the repurchase and/or reverse repurchase transactions in accordance with the time schedule agreed to by you and BSC, but in no event later than 12:00 p.m. (New York time) on the day of execution, (c) you shall be the party in interest for such Clearing Transaction and you shall bear all the risks related to such Clearing Transaction including but not limited to, non-performance by the third party dealer and (d) you will provide BSC the necessary securities or cash, as the case may be, to enable BSC to process, clear and settle the delivery of the securities and cash related to such transactions, including any cash or securities necessary to meet a demand for margin made by the third party dealer.  The term "Details" shall mean the specific third party dealer, the department at the specific third party dealer, the purchase/settlement date, the purchase or sale price, the purchased securities, the pricing rate, and the repurchase date.

You shall not, under any circumstances represent to any third party dealer that any Bear Stearns entity acts as guarantor of any repurchase or reverse repurchase transactions you execute with such third party dealer.

3.      **Collection of Principal and Interest Payments.**  BSC will receive payments of principal and interest due and payable on or on account of securities held by BSC in your account.  BSC shall not, however, be responsible to (a) claim payments of principal and interest due and payable with respect to fed wireable securities that are the subject of repurchase or reverse repurchase transactions with third party dealers or (b) enforce collection, by legal means or otherwise, of any payments of principal and/or interest not paid when due.

4.      **Pricing.**  If and to the extent any pricing information related to securities in any of your accounts (a "pricing estimate") is included in any report or file that is provided to you, the pricing estimate will be provided solely for evaluative purposes and not for trading purposes and will be based on prices that are generated by BSC's pricing system.  Such pricing estimates may (a) not reflect the actual market value of the securities, (b) vary from the value BSC may assign to any such securities in other circumstances and (c) not take into account the size of the position you have in the securities.  As a condition to providing you with pricing estimates, you represent, warrant and covenant to BSC that you (i) will use the pricing estimates provided by BSC in combination with pricing estimates obtained from other sources, (ii) will not use the pricing estimates to determine the net asset value of any fund, (iii) will not, at any time without the prior written consent of BSC, disclose or reveal the pricing estimates to any person or entity, other than to those of your officers and employees who are required in the course of their duties with respect to the securities to access the same and who shall be required by you to observe the same restrictions on the use of the pricing estimates as are contained in this Supplement, and (iv) have the policies and procedures in place necessary to comply with the restrictions on use related to the pricing estimates and the terms of this Supplement.

5.      **Fees.**  From time to time, BSC and you will agree on compensation to be paid with respect to Special Clearing Transactions or Clearing Transactions.  BSC reserves the right to impose minimum fees on inactive accounts.

6.      **MBSCC.**  In the event that BSC establishes an MBSCC subaccount for you, BSC will pass on to you all MBSCC fees that are related to such subaccount.

7.      **Non-Waiver.**  For the avoidance of doubt and as set forth in the IAA, BSC may decline to clear or settle any Special Clearing Transaction or any Clearing Transaction if it determines, in its sole discretion, that such transaction poses unacceptable risk.  For the avoidance of doubt nothing contained in this Supplement shall constitute a waiver by Bear Stearns of any of its rights under the IAA.

_Amerindo Technology Growth Fund II, Inc._ Bear, Stearns & Co. Inc.
Name of Institution                                        Name of Institution

_Gary Tanaka , Director_
Name and Title of Authorized Officer            Name and Title of Authorized Officer

_[signature]_                                              _[signature John Cleary]_
Signature of Authorized Officer                    Signature of Authorized Officer

_3/6/02_
Date                                                          Date

G:\Forms\Agreement\IAA\IAA-AND                                    SUPPLMNTS09/21/01.doc

12

## SUPPLEMENT TO INSTITUTIONAL ACCOUNT AGREEMENT
### REGARDING PRIME BROKERAGE SERVICES

The following shall supplement and form part of the attached Institutional Account Agreement (the "Agreement") and shall set forth the terms and conditions under which Bear Stearns will provide prime brokerage services to you. Notwithstanding the foregoing or anything else contained in this Supplement, this Supplement shall not apply to Activities that constitute clearance services to you for transactions executed away from Bear Stearns involving securities which are processed and cleared through accounts whose account number begins with "021" as such accounts may be supplemented or amended from time to time ("Special Clearing Transactions"). In the event of any uncertainty or dispute, Bear Stearns shall determine whether a transaction is a Special Clearing Transaction.   All defined terms in the Institutional Account Agreement shall have the same meanings in this Supplement as they have in the Institutional Account Agreement.

1.  The term "Activity" shall also mean Prime Brokerage transactions, as described below.

2.  Prime Brokerage Services

(a) Prior to the commencement of any prime brokerage activity, Bear Stearns will enter into an agreement with your executing broker(s) that will set forth the terms and conditions under which your executing broker(s) will be authorized to accept orders from you for settlement by Bear Stearns (the "Prime Brokerage Agreement"). Bear Stearns will accept for clearance and settlement trades executed on your behalf by such executing broker(s) as you may designate from time to time. On the day following each transaction, Bear Stearns will send you a notification of each trade placed with your executing broker based upon the information provided by you. This notification contains some but not all of the information required to appear in a confirmation. Your executing broker is responsible for delivering to you a confirmation of each trade executed and settled on your behalf.

(b) Subject to paragraph 10 of the Agreement, Bear Stearns shall be obligated to settle trades executed on your behalf by your executing broker(s) and reported to Bear Stearns by you and your executing broker(s) provided that you have reported to Bear Stearns promptly upon execution of the trade, but in no event later than 4:00 p.m. (New York time) on the trade date, or by such other time as Bear Stearns may advise you, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that Bear Stearns has not 'DK'd' ("indicated it does not know") and has not subsequently disaffirmed such trades. Upon Bear Stearns becoming obligated to settle a trade, you shall be responsible and liable to Bear Stearns for making the settlement payment (including the delivery of applicable securities) with respect to such trade. In the event that Bear Stearns determines not to settle a trade, Bear Stearns shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (a) of this paragraph. In the event that Bear Stearns determines not to settle a trade, you shall be solely responsible and liable to your executing broker(s) for settling such trade. In addition, Bear Stearns may be required to cease providing prime brokerage services to you in accordance with the Prime Brokerage Agreement.

(c) In the event of: (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, if Bear Stearns agrees to settle any trades executed on your behalf by such executing broker, regardless whether Bear Stearns did not DK and did not disaffirm such trades, you shall be solely responsible, and liable to Bear Stearns, for any losses arising out of or incurred in connection with Bear Stearns' agreement to settle such trades.

(d) You shall maintain in your account with Bear Stearns such minimum net equity in cash or securities as Bear Stearns, in its sole discretion may require, from time to time (the "Bear Stearns Net Equity Requirements"), which shall in no event be less than the minimum net equity required by the SEC Letter, as defined in sub-paragraph (g) of this paragraph (the "SEC Net Equity Requirements"). In the event your account falls below the SEC Net Equity Requirements, you hereby authorize Bear Stearns to notify promptly all executing brokers with whom it has a Prime Brokerage Agreement on your behalf of such event. Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, Bear Stearns shall: (i) notify all such executing brokers that Bear Stearns is no longer acting as your prime broker and (ii) "DK" all prime brokerage transactions on your behalf with trade date after the business day on which such notification was sent. In the event either: (i) your account falls below the Bear Stearns Net Equity Requirements, (ii) Bear Stearns determines that there would not be enough cash in your account to settle such transactions or that a maintenance margin call may be required as a result of settling such transactions, or (iii) Bear Stearns determines that the continuation of prime brokerage services to you presents an unacceptable risk to Bear Stearns taking into consideration all the facts and circumstances, Bear Stearns may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker.

(e) If you have instructed your executing broker(s) to send confirmations to you in care of Bear Stearns, as your prime broker, the confirmation sent by such executing broker is available to you promptly from Bear Stearns, at no additional charge.

(f) If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your advisor, according to your advisor's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by Bear Stearns. You hereby authorize Bear Stearns to disclose your name, address and tax ID number to your executing broker(s). In the event any trade is disaffirmed, as soon as practicable thereafter, Bear Stearns shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your advisor.

(g) The prime brokerage services hereunder shall be provided in a manner not inconsistent with the no-action letter dated January 25, 1994 issued by the Division of Market Regulation of the Securities and Exchange Commission (the "SEC Letter"), and any supplements or amendments thereto.

This Supplement is dated as of the ____6____ of ____March____, 200_7_

_Amerindo Technology Growth Fund II, Inc._
[NAME OF ACCOUNT]

By: _____

Name: _Gary Tanaka_

Its: _Director_

14

*FAM 10P 102-01495*

# Certificate of Corporate Secretary
## Brokerage Account and Trading Resolutions

I, *Gary Tanaka*, being the ~~Secretary~~ *Director* of *Amerindo Technology Growth Fund II Inc.*, duly organized and validly existing under the laws of *PANAMA*, and having a principal place of business at *43 Upper Grosvenor Street London England* (the "Corporation"), hereby certify that, at a meeting of the Board of Directors of the Corporation duly held on the _____ *2nd* _____ day of *January*, *2002* _____, the following Resolutions were duly adopted and are now in full force and effect:

Opening of **Brokerage** Account(s); Conducting Transactions

RESOLVED, that the Corporation is hereby authorized and directed to establish and maintain one or more accounts (including margin accounts) (each, an "Account"), and to engage in any of the transactions hereinafter described, with or through, Bear, Stearns & Co. Inc., Bear, Stearns Securities Corp., Bear, Stearns International Limited and/or any of their now or hereafter existing affiliated entities (collectively, "Bear Stearns"), through an Account or otherwise. Bear Stearns is authorized to act as principal or agent in such transactions;

Trading Authority *

RESOLVED, that the Corporation is hereby authorized and empowered to purchase (including on a forward or when-issued basis or on margin), hold, finance, pledge, exercise, convert, tender, redeem, exchange, transfer, assign, sell (including short, when-issued and forward sales), enter into, write, issue, terminate, amend and otherwise deal and trade, singly or in combination, in the following:

- **Securities (General):** any and all forms of securities, trust certificates, evidences of interest, participation or indebtedness of any kind whatsoever, whether publicly registered or exempt from registration, for example as a private placement or exempt security, including without limitation, the securities, instruments and transactions listed in the categories set forth below;

- **Debt Securities:** any and all forms of bonds, debentures or notes of any coupon (including "zero coupon") or maturity, including, but not limited to, obligations issued or guaranteed by the United States government or any of its agencies or instrumentalities, Government Sponsored Enterprises (including, but not limited to, Fannie Mae, Freddie Mac, the Federal Farm Credit Banks Funding Corporation, the Federal Home Loan Banks and Sallie Mae), foreign sovereign nations, corporations or other entities, including special purpose entities, whether investment grade, unrated, high-yield, secured or unsecured;

- **Equity Securities:** any and all forms of common and preferred stock, scrip, warrants and rights;

- **Mortgages, Mortgage-Backed, Asset-Backed and other Structured Securities:** whole mortgage loans and interests and participations in mortgage loans, whether residential, commercial or multi-family; mortgage-backed, mortgage-related or mortgage-derived securities or instruments of any kind whatsoever including, but not by way of limitation, any tranches of collateralized mortgage obligations, REMICs, mortgage pass-through certificates and participation certificates, whether issued or guaranteed by or backed by collateral of a government agency, Government Sponsored Enterprise or a private issuer, including, but not limited to, planned or targeted amortization, interest-only, principal-only, floating rate, inverse floating rate or zero coupon classes, interest-only or principal-only strips or mortgage residuals or any combination of the foregoing all forms and tranches of asset-backed securities, including, but not limited to, securities backed by auto, truck, boat, home equity, credit card loans, and any other form of consumer debt or business debt, lease payments, any form of bank debt or debt pass-through securities, and equity or other interests in and debt instruments issued by entities whose principal assets are any of the foregoing and any asset-backed residual;

- **Repurchase, Reverse Repurchase, Securities Lending and Similar Transactions:** repurchase and reverse repurchase transactions, securities lending, bonds borrow pledge, dollar rolls, buy forward sale and other similar transactions involving cash or any kind of security, asset-backed interest or participation or other financial instrument;

---

* SECURITIES OR TRANSACTIONS THAT ARE NOT AUTHORIZED HAVE BEEN CROSSED OUT.

F:\Authority docs\Trading_Authority_Corp 8-13-011.doc

5/2001

- Money Market Instruments, Bank Notes and Bank Loans: money market instruments, including, but not limited to, bankers acceptances, certificates of deposit and commercial paper, deposit notes and other bank notes and corporate, commercial or sovereign loans or obligations;

- Foreign Exchange: spot and forward transactions in foreign currencies, currency futures contracts, and listed or over-the-counter options on foreign currencies;

- Commodities and Futures: commodities and financial futures contracts and listed and over-the-counter options on commodities and financial futures;

- Options and Certain Derivative Transactions: options and derivative transactions, including, but not limited to, any and all forms of listed or over-the-counter options, whether physical or cash settled, (whether or not "covered") on, and transactions whose performance is linked to, or derived from, individual groups or indices of bonds, notes or other evidences of indebtedness, equities, currencies, interest rates, commodities, financial instruments, or any other securities whether or not described in this resolution or any similar transaction or combination thereof whether on a forward basis or otherwise, including any option to enter into any of the foregoing;

- Interest Rate, Currency and Other Swap Transactions: swap transactions, including, but not limited to, interest rate swaps, basis swaps, commodity swaps, rate protection transactions, interest rate futures, caps, collars, floors, corridors, and forward rate agreements, currency swap agreements, cross-currency rate swap agreements, total return swaps related to individual groups or indices of bonds, notes, or other evidences of indebtedness, equities, financial instruments or any other securities whether or not described in this resolution, transactions linked to the creditworthiness of one or more issuers or sovereigns or any similar transaction or combination thereof, whether on a forward basis or otherwise, including any option to enter into any of the foregoing;

- International Securities and Transactions: each of the above itemized securities, obligations, instruments and other transaction types may be dealt in regardless of whether such security, obligation, instrument or other transaction type is issued by, the obligation of, or related to, a foreign person, enterprise or sovereign, is denominated in a foreign currency or trades or is settled on or through a foreign market, exchange or clearinghouse; and

- Miscellaneous: any transaction that is similar to any of the transactions described above (including an option with respect to any of them), any combination of these transactions or any other transaction, whether or not described in this resolution.

Authorized Officers/Agents

RESOLVED, that each of the officers or agents of the Corporation listed below is hereby individually authorized for and on behalf of the Corporation (1) to give to and receive from Bear Stearns oral or written instructions, confirmations, notices or demands with respect to any Account or transaction; (2) to have complete authority at all times to bind the Corporation to enter into and perform any transaction or agreement, amendment or modification thereof, relating to any Account or transaction involving the Corporation; (3) to lend or borrow money or securities and to secure the repayment thereof with the property of the Corporation; (4) to pay in cash or by check or draft drawn upon the funds of the Corporation any sums required to be paid in connection with any Account or transaction; (5) to order the transfer or delivery of any securities, funds or other property to such officer or agent or to any other person; (6) to order the transfer of record of any securities, funds or other property to any name and to accept delivery of any securities, funds or other property; (7) to direct the sale or exercise of any rights with respect to any securities or other property; (8) to sign for and on behalf of the Corporation all agreements, confirmations, releases, assignments, powers of attorney or other documents in connection with any Account or transaction; (9) to agree to any terms or conditions or to execute any document or agreement affecting any Account or transaction; (10) to endorse any securities or other property in order to pass title thereto (or to any interest therein); (11) to direct Bear Stearns to surrender any securities or other property for the purpose of

effecting any exchange or conversion thereof or otherwise; (12) to appoint any other person or persons to do any and all things which such officer or agent is hereby empowered to do and (13) generally, to take all such action as such officer or agent may deem necessary or desirable to implement or facilitate the trading activities authorized in the preceding Resolutions.

| Name of Officer/Agent | Title/Firm Name | Specimen Signature |
|---|---|---|
| Alberto Vilar | | |
| Gary Tanaka | | |

RESOLVED, that the Corporation hereby agrees to indemnify and hold each Bear Stearns entity and all of their respective successors, affiliates, assigns, officers, directors and employees, (the "Indemnified Parties") harmless from, and to pay the Indemnified Parties promptly on demand any and all losses, liabilities, damages, claims, costs or expenses (including attorneys' fees and expenses) incurred in connection with their reliance on the terms of these Resolutions, including any debit balance in the Corporation's Account(s). This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which any of the Indemnified Parties may have under any other agreement(s) between the Corporation and any of the Indemnified Parties.

Effectiveness of Resolutions

RESOLVED, that the foregoing Resolutions shall apply to all transactions and agreements between the Corporation and Bear Stearns, even if such transactions and agreements were entered into by the Corporation and Bear Stearns prior to the adoption of such Resolutions (which prior transactions and agreements with Bear Stearns are hereby ratified in all respects) and shall remain in full force and effect until the close of business on the second business day after Bear Stearns receives written notice of the modification or revocation thereof at its offices located at 245 Park Avenue, New York, New York 10167, Attn: Senior Managing Director, Global Credit Department, or any other successor address which has been provided to you.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the seal of the Corporation to be affixed on this 6 day of March, 20 02

Secretary

[CORPORATE SEAL]

DOC. CODE 47

02-01495

REGIONAL R.R. COPY

## OPTIONS INFORMATION FORM AND AGREEMENT

Account # 02-014-95

AMERINDO INV ADVISORS INC

C/O 13 UPPER GROSVENOR ST, PHONE 0207 4912339

AMERINDO TECH & GROWTH FUND II

JAN 31 2005

Date  2/3/05

Date  1/31/05

PLEASE PRESS FIRMLY

**BEAR STEARNS**   102 - 01495

REPORT OF NEW ACCOUNT

CUSTOMER NAME(S) — SOCIAL SECURITY NO. TAX I.D.

AMERINDO TECHNOLOGY GROWTH FUND II, INC.   Foreign

BUSINESS ADDRESS — BUSINESS PHONE

c/o AMERINDO Investment Advisors, Inc.
17A Curzon Street  LONDON W1Y 7FE   629 2349
England

| TYPE OF ENTITY (MUST CHECK ONE) | | |
|---|---|---|
| A. INDIVIDUAL ☐ | G. SOLE OWNERSHIP ☐ | M. INVESTMENT CLUB ☐ |
| B. JOINT ☐ | H. BANK OR TRUST CO ☐ | N. TRUST ☐ |
| C. PARTNERSHIP ☐ | I. INSURANCE CO. ☐ | O. MUTUAL FUND ☒ |
| D. CORPORATION ☐ | J. STATE AGENCY ☐ | P. HEDGE FUND ☐ |
| E. TESTAMENTARY TRUST ☐ | K. BROKER-DEALER ☐ | Q. IRA (see over) ☐ |
| F. OTHER (SPECIFY) ☐ | L. ESTATE ☐ | R. KEOGH (see over) ☐ |

IF OTHER THAN A PRINCIPAL OR JOINT ACCOUNT INDICATE PERSON AUTHORIZED TO ENTER ORDERS AND ISSUE INSTRUCTIONS

Amerindo InvestmentAdvisors (address as above)

STATE NAME AND RELATIONSHIP OF ANY THIRD PARTY OTHER THAN PRINCIPALS HOLDING TRADING AUTHORIZATION

Amerindo Investment Advisors (address as above)

BEAR STEARNS - NY

295 12710

ADDENDUM TO THE BEAR, STEARNS SECURITIES CORP.
CUSTOMER AGREEMENT FOR PRIME BROKERAGE SERVICES

This Addendum sets forth the terms and conditions under which Bear, Stearns & Co. Inc. and Bear, Stearns Securities Corp., their successors and assigns (collectively, "Bear Stearns") will provide prime brokerage services to you on or after July 25, 1994 or such later date when the SEC Letter, as defined herein, shall become effective.  All defined terms in the Customer Agreement shall have the same meanings in this Addendum as they have in the Customer Agreement.

1.   *SCOPE OF PRIME BROKERAGE SERVICES*

Prior to the commencement of any prime brokerage activity, Bear Stearns will enter into an agreement with your executing broker(s) that will set forth the terms and conditions under which your executing broker(s) will be authorized to accept orders from you for settlement by Bear Stearns (the "Prime Brokerage Agreement").  Bear Stearns will accept for clearance and settlement trades executed on your behalf by such executing broker(s) as you may designate from time to time.  On the day following each transaction, Bear Stearns will send you a notification of each trade placed with your executing broker based upon the information provided by you. This notification contains some but not all of the information required to appear in a confirmation.

2.   *COMPLIANCE*

The prime brokerage services hereunder shall be provided in a manner not inconsistent with the no-action letter dated January 25, 1994 issued by the Division of Market Regulation of the Securities and Exchange Commission (the "SEC Letter"), and any supplements or amendments thereto.

3.   *PRIME BROKER'S SETTLEMENT OBLIGATION · CUSTOMER'S SETTLEMENT OBLIGATION*

a   Bear Stearns shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to Bear Stearns by your executing broker(s) provided that you have reported to Bear Stearns on trade date, by the time designated to you by Bear Stearns, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or number of units and whether the transaction was a long or short sale or a purchase, and further provided that Bear Stearns has either affirmed or not DK'd and has not subsequently disaffirmed such trades.  In the event that Bear Stearns determines not to settle a trade, Bear Stearns shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under paragraph #1 of this Agreement.  You shall be solely responsible and liable to your executing broker(s) for settling such trade.  In addition, Bear Stearns may be required to cease providing prime brokerage services to you in accordance with the Prime Brokerage Agreement.

7 1

MAY-19-'95 17:39   ID:CORRESP CLEARING BUS   TEL NO:1212272148B   #787 P06

according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by Bear Stearns. You hereby authorize Bear Stearns to disclose your name, address and tax I.D. number to your executing broker(s). In the event any trade is disaffirmed, as soon as practicable thereafter, Bear Stearns shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your advisor.

7.    CLEARANCE ACCOUNTS

In the event Bear, Stearns Securities Corp. carries your account as clearing agent for your broker, you agree that your broker and its employees are third-party beneficiaries of this Addendum, and that the terms and conditions hereof shall be applicable to all matters between or among any of you, your broker and its employees, and Bear Stearns and its employees

8.    AMENDMENT; ENTIRE AGREEMENT

You agree that Bear Stearns may modify the terms of this Addendum at any time upon prior written notice. By continuing to accept prime brokerage services from Bear Stearns, you will have indicated your acceptance of any such modifications. If you do not accept such modifications, you must notify Bear Stearns in writing; Bear Stearns shall cease providing prime brokerage services to you, after which you will remain liable to Bear Stearns for all remaining liabilities or obligations. Otherwise, this Addendum may not be waived or modified absent a written instrument signed by an authorized representative of Bear Stearns. Except as set forth above, this Addendum represents the entire agreement and understanding between you and Bear Stearns concerning the provision of prime brokerage services. In the event of an inconsistency between the terms of the Customer Agreement and this Addendum, the terms of this Addendum shall supersede the inconsistent term or terms of the Customer Agreement to the extent of the inconsistency

This Agreement is dated as of ___19ᵗʰ MAY___, 19 __95__

GARY A TANAKA        AMERINDO TECH GROWTH FUND
                     102 - 01495
                                  70P

Accepted By _____        Date: _____

P. PRADDEND (1/87)

**BEAR STEARNS**   102 - 01495   REPORT OF NEW ACCOUNT (001)

| CUSTOMER'S NAME IN FULL | SOCIAL SECURITY _102-01495_ |
|---|---|

AMERINDO TECHNOLOGY GROWTH FUND II, INC.   Foreign

| BUSINESS ADDRESS | BUSINESS PHONE |
|---|---|

c/o AMERINDO Investment Advisors, Inc.
17A Curzon Street, LONDON W1Y 7FE   629 2349
England

HOME ADDRESS                                    HOME PHONE

TYPE OF ENTITY ( MUST CHECK ONE)

| A. INDIVIDUAL ☐ | G. SOLE OWNERSHIP ☐ | M. INVESTMENT CLUB ☐ |
|---|---|---|
| B. JOINT ☐ | H. BANK OR TRUST CO. ☐ | N. TRUST ☐ |
| C. PARTNERSHIP ☐ | I. INSURANCE CO. ☐ | O. MUTUAL FUND ☒ |
| D. CORPORATION ☐ | J. STATE AGENCY ☐ | P. HEDGE FUND ☐ |
| E. TESTAMENTARY TRUST☐ | K. BROKER-DEALER ☐ | Q. IRA (see over) ☐ |
| F. OTHER (SPECIFY) ☐ | L. ESTATE ☐ | R. KEOGH (see over) ☐ |

| APPROX. ANNUAL INCOME | APPROX NET WORTH | INVESTMENT OBJECTIVE |
|---|---|---|

EMPLOYED BY AND NATURE OF BUSINESS                          POSITION OR OCCUPATION

IS CUSTOMER EMPLOYED BY A MEMBER FIRM? YES☐ NO☐

| APPROXIMATE AGE OF CUSTOMER | INTRODUCED TO RR BY |
|---|---|
| RR KNOWN HOW LONG? | IS RR RELATED? YES ☐ NO ☐ / STATE RELATIONSHIP |

MARITAL STATUS          MARRIED ☐ SINGLE ☐ SPOUSE'S OCCUPATION

| BANK AND OTHER REFERENCES | DOES CUSTOMER HAVE OTHER ACCOUNTS WITH US? YES ☐ NO ☐ SPECIFY ACCOUNT NO |
|---|---|

ACCOUNT WILL BE TRADING       CASH☐       MARGIN ☒       COMMODITY☐

IS ACCOUNT HANDLED BY AN INVESTMENT ADVISOR? YES☒ NO☐

SPECIFY   Amerindo InvestmentAdvisors (address as above)

IF OTHER THAN AN INDIVIDUAL OR JOINT ACCOUNT INDICATE PERSON AUTHORIZED TO ENTER ORDERS AND ISSUE INSTRUCTIONS                          TITLE

| INITIAL TRANSACTION | | DEPOSIT |
|---|---|---|
| SECURITY | NO. SHARES | NO. DEPOSIT |

REASON FOR WAIVE OF DEPOSIT

DOES RR HAVE TRADING AUTHORITY? YES☐ NO☐        RR NAME

STATE NAME AND RELATIONSHIP OF ANY THIRD PARTY (OTHER THAN RR) HOLDING TRADING AUTHORIZATION

Amerindo Investment Advisors (address as above)

| TRADING AUTHORIZATION WILL BE | LIMITED☐ | FULL ☒   *GEN PWR OF ATTY ☐ *NOT ACCEPTABLE FOR BEAR STEARNS & CO INC RR's |
|---|---|---|

IS THIS ACCOUNT GUARANTEED? YES☐ NO☐        ACCOUNT NUMBER OF GUARANTOR

RR REGISTERED IN CUSTOMER'S STATE OF RESIDENCE   YES☐ NO☐

HAVE YOU SENT FORMS TO CUSTOMER?   YES☐ NO☐

| RR SIGNATURE | HOME EXTENSION | DATE | SUPERVISOR SIGNATURE | DATE |
|---|---|---|---|---|
| PARTNER'S SIGNATURE | | DATE | DOCUMENTATION REVIEW | DATE |

3000-88(5/85)                          BEAR STEARNS - NY

## FACE COPY - DO NOT WRITE ON THIS SIDE

(003)
102-01495

**BEAR STEARNS**

Bear, Stearns & Co. Inc.
2 Broadway
New York, N.Y. 10004

CUSTOMER AGREEMENT

PLEASE READ CAREFULLY SIGN AND RETURN

This Agreement sets forth the terms and conditions under which we, Bear, Stearns & Co. Inc., its successors and assigns ("Bear Stearns") will maintain your account for purchases and sales of securities and other property. You understand that if your account is a cash account the provisions of paragraphs 15 and 16 are not binding upon you unless you enter into a margin transaction.

1. **APPLICABLE LAW AND REGULATIONS.** All transactions in your account shall be subject to all applicable law and the rules and regulations of all federal, state and self-regulatory agencies including but not limited to the Board of Governors of the Federal Reserve System and the constitution, rules and customs of the exchange or market (and its clearing house) where executed.

2. **SECURITY INTEREST AND LIEN.** You agree that Bear Stearns shall have a continuing security interest in all your property including but not limited to securities, commodity futures contracts, commercial paper, monies, and any other acquired property held by it or carried in your accounts, as security for the payment of all your obligations and liabilities to Bear Stearns. In the event of a breach or default under this Agreement, Bear Stearns shall have all rights and remedies available to a secured creditor under the Uniform Commercial Code of New York as then in effect in addition to the rights and remedies provided herein or otherwise by law.

3. **DEPOSITS ON CASH TRANSACTIONS.** If at any time Bear Stearns considers it necessary for its protection it may in its discretion require you to deposit cash or collateral in your account to assure due performance by you of your open contractual commitments.

4. **BREACH, BANKRUPTCY OR DEFAULT.** Any breach of this Agreement or the filing of a petition in bankruptcy or for the appointment of a receiver by or against you or the levy of an attachment against your account(s) with Bear Stearns, or your death, mental incompetence or dissolution, shall constitute at Bear Stearns' election, a default by you under all other agreements which Bear Stearns may then have with you (whether heretofore or hereafter entered into) for the purchase from you or sale to you of any property or any other type of transaction. Bear Stearns reserves the right to sell any and all property in your account(s) with a lender individually or jointly with others to buy any or all property which may be then in such accounts and/or to cancel all outstanding transactions and to offset any indebtedness in your account against any other account you may have [whether individually or jointly with others] and you shall be liable to Bear Stearns for any loss and/or costs sustained. Such purchases and/or sales may be public or

private and may be made without notice or advertisement and in such manner as Bear Stearns may in its discretion determine. At any such sale or purchase, Bear Stearns may purchase or sell the property free of any right of redemption.

5. **BINDING UPON YOUR ESTATE.** You hereby agree that this Agreement and all the terms thereof shall be binding upon your heirs, executors, administrators, personal representatives and assigns.

6. **FINALITY OF REPORTS.** Reports of the execution of orders and statements of your account shall be conclusive if not objected to in writing within five days and ten days, respectively, after transmittal to you by mail or otherwise.

7. **RECEIPT OF TRUTH-IN-LENDING.** You hereby acknowledge receipt of Bear Stearns' Truth-in-Lending disclosure statement. You understand that interest will be charged on any debit balances in accordance with the methods described in this statement or in any amendment or revision thereto which may be provided to you.

8. **CLEARANCE ACCOUNTS.** If Bear Stearns carries your account as clearing broker by arrangement with another broker through whose courtesy your account has been introduced, then unless Bear Stearns receives from you a written notice to the contrary, Bear Stearns shall accept from such other broker, without any inquiry or investigation by it (i) orders for the purchase or sale in account of securities and other property, on margin or otherwise, and (ii) any other instructions concerning said account. You understand that Bear Stearns shall have no responsibility or liability to you for any acts or omissions of such other broker, its officers, employees or agents. Any such broker has authorized us to enter into this agreement with you on their behalf and the terms and conditions thereof, including the arbitration provision, shall be applicable to all matters between such broker and you.

9. **COSTS OF COLLECTION.** In the event that Bear Stearns has to employ counsel or a collection agency to collect any debit balance which you owe, you hereby authorize Bear Stearns to charge you for the reasonable costs of collection including but not limited to attorneys' fees, court costs and expenses whatsoever, in nature incurred by it in its efforts said collection.

10. IMPARTIAL LOTTERY ALLOCATION. You agree, that in the event Bear Stearns holds on your behalf bonds or preferred stocks in street or bearer form which are callable in part, you will participate in the impartial lottery allocation system of the called securities in accordance with the rules of the New York Stock Exchange, Inc. Further you understand when the call is favorable no allocation will be made to any account in which Bear Stearns, its partners or employees have financial interest until all other customers are satisfied on an impartial lottery basis.

11. WAIVER, ASSIGNMENT AND NOTICES. No term or provision of this Agreement may be waived or modified unless in writing and signed by the party against whom such waiver or modification is sought to be enforced. Bear Stearns' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereunder or any continued course of such conduct on its part shall in no event constitute or be considered a waiver by Bear Stearns of any of its rights or privileges. This Agreement contains the entire understanding between you and Bear Stearns concerning the subject matter of this Agreement. You may not assign your rights and obligations hereunder without first obtaining the prior written consent of Bear Stearns. Notice or other communications including margin calls delivered or mailed to the address given below shall, until Bear Stearns has received notice in writing of a different address, be deemed to have been personally delivered to you.

12. NEW YORK LAW TO GOVERN. This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights and liabilities of the parties determined, in accordance with the laws of the State of New York.

13. ARBITRATION. It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws.

The undersigned agrees, and by carrying an account for the undersigned you agree, that except as inconsistent with the foregoing sentence, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration in accordance with the rules,

BY SIGNING THIS AGREEMENT YOU ACKNOWLEDGE THAT THE SECURITIES IN YOUR MARGIN ACCOUNT MAY BE LOANED TO BEAR STEARNS OR LOANED OUT TO OTHERS.

IF JOINT ACCOUNT BOTH PARTIES MUST SIGN

AMERINDO TECHNOLOGY GROWTH FUND II, INC.
(Typed or Printed Name)

X _____
(Signature)

_____Albert W. Vilar_____
(Typed or Printed Name)

then in effect, of the National Association of Securities Dealers, Inc., the Board of Governors of the New York Stock Exchange, Inc. or the Board of Governors of the American Stock Exchange, Inc. as you may elect. If you do not make such election by registered mail addressed to Bear Stearns at 55 Water Street, New York, New York 10041, Attention: Director Legal and Compliance Department, within five days after demand by Bear Stearns that you make such election, then Bear Stearns may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

14. PARTIAL UNENFORCEABILITY. If any provisions herein are or should become inconsistent with any present or future law, rule or regulation of any sovereign government or a regulatory body having jurisdiction over the subject matter of this Agreement, such provision shall be deemed to be rescinded or modified in accordance with any such law, rule or regulation. In all other respects, this Agreement shall continue and remain in full force and effect.

15. MARGIN IN MARGIN ACCOUNTS (NOT APPLICABLE TO CASH ACCOUNTS). You hereby agree to maintain such margins in your margin account as Bear Stearns may in its discretion require and you agree to pay forthwith on demand any debit balance owing with respect to any of your margin accounts, and if not paid this shall be a breach of this Agreement and Bear Stearns may take such action as it considers necessary for its protection in accordance with this Agreement. You will be charged interest on your debit balance which if not paid at the close of an interest period will be added to the opening balance for the next interest period. Please consult the Truth-In-Lending disclosure statement for an outline of Bear Stearns' margin policies.

16. CUSTOMER'S CONSENT TO LOAN OR PLEDGE OF SECURITIES (NOT APPLICABLE TO CASH ACCOUNTS). You hereby authorize Bear Stearns to lend either to itself or to others any securities held by Bear Stearns in your margin account and to carry all such property in its general loans and such property may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other such property for any amounts due to Bear Stearns thereon or for a greater sum, and Bear Stearns shall have no obligation to retain a like amount of similar property in its possession and control.

Persons signing on behalf of others please indicate title or capacity in which you have signed

c/o Amerindo Investment Advisors, Inc.
17A Curzon Street,
LONDON W1Y 7FE, England
(Mailing Address)

Acct. No. 102 - 01495

Date 1st September 1987

DOCUMENTATION DEPARTMENT USE ONLY - DO NOT WRITE IN THIS AREA    DOC CODE 76

Account No. _____

(053)

## FORM OF CORPORATE RESOLUTIONS
## TO BE RECEIVED BY BEAR STEARNS

102-01495

### Corporate Account

Amerindo Technology Growth Fund II, Inc. (the "Corporation"), by its President,
(Name of Corporation)
pursuant to the resolutions, a copy of which, certified by the Secretary, is annexed hereto, hereby
authorizes Bear, Stearns & Co. Inc. ("Bear Stearns") to open an account in the name of the
Corporation. This authorization shall continue in force until revoked by the Corporation by a
written notice, addressed to Bear Stearns and delivered at its office at 55 Water Street, New York,
New York, 10041, Attention: Director, Legal & Compliance Department. No such revocation shall
effect in any manner Bear Stearns' rights under these resolutions and indemnity with respect
to any obligation arising prior to your actual receipt of such written notice of revocation.

Very truly yours.

**SUPERSEDED**
DATE: 4/9/02
BY: _____

Name of Corporation
Amerindo Technology Growth Fund II, Inc.

By: Maria E. Dichov
(Name and Title)

I, __Maria E. Dichov__ _____, being the Secretary of
(Name of Secretary)
__Amerindo Technology Growth Fund II, Inc.__ (the "Corporation"), hereby certify that the
(Name of Corporation)
resolutions set forth below were duly adopted at a meeting of the Board of Directors of the
Corporation, duly held on the  fifth                    day of  November          , 1987  ,
at which a quorum of said Board of Directors was present and acting throughout and that no action
has been taken to rescind or amend said resolutions and that the same are now in force and effect.

I further certify that each of the following has been duly elected and is legally holding the office
set forth opposite his name:

        Albert W. Vilar  , President
        Gary A. Tanaka   , Vice-President
        B. C. Fong       , Treasurer
        M. E. Dichov     , Secretary

I further certify that the Corporation is duly organized and existing and has the power to take
the action called for by the resolutions annexed hereto.

**IN WITNESS WHEREOF,** I have hereunto affixed my hand this  fifth        day of
November          , 19 87.

_____
(Secretary)

2000-409 (1/97)

Certified Copy of Resolutions Adopted By The
Board of Directors Whereby the Establishment and Maintenance
of Trading Accounts Have Been Authorized

RESOLVED, That the President or any Vice President of _____
_____ (the ''Corporation''),
or _____ or _____ be and they hereby are,
_____
(Name of Corporation)
and each of them hereby is, authorized and empowered, for and on behalf of this Corporation to
establish and maintain one or more accounts, [which may be margin accounts]*, with Bear, Stearns
& Co. Inc. (''Bear Stearns'') for the purpose of purchasing, investing in, or otherwise acquiring,
selling (including short-sales), possessing, transferring, exchanging, pledging, financing, engag-
ing in repurchase or reverse repurchase transactions or otherwise disposing of, or realizing upon,
and generally dealing in and with (a)** any and all forms of securities including, but not by way of
limitation, shares, stocks, listed or otc options, bonds, debentures, notes, scrip, participation
certificates, rights to subscribe, option warrants, certificates of deposit, mortgages, GNMAs,
FHLMCs, FNMAs, privately issued mortgage pass through certificates, multi-family project loans
insured by the Federal Housing Administration, forward contracts, standby contracts, choses in
action, evidences of indebtedness, commercial paper, certificates of indebtedness and certificates
of interest of any and every kind and nature whatsoever, secured or unsecured, whether represented
by trust, participating and/or other certificates or otherwise, and (b)** any and all commodities,
commodity futures contracts, commodity options and options of commodity futures.

RESOLVED, That the fullest authority at all times with respect to any such commitment, or
with respect to any transaction, referred to in the preceding resolution deemed by any of the said
officers, employees or agents to be proper in connection therewith is hereby conferred, including
authority (without limiting the generality of the foregoing) to give written or oral instructions to
Bear Stearns with respect to said transactions; to borrow or lend money and/or securities, and to
secure repayment thereof with the property of the Corporation; to bind and obligate the Corporation
to and for the carrying out of any contract, arrangement, or transaction, which shall be entered into
by any such officer, employee and/or agent for and on behalf of the Corporation with or through
Bear Stearns; to pay in cash or by checks and/or drafts drawn upon the funds of the Corporation such
sums as may be necessary in connection with any of the said accounts; to deliver securities, com-
modities, commodity options on commodity futures and/or commodity futures contracts to Bear
Stearns; to order the transfer or delivery of securities, commodities and commodity options to any
other person whatsoever, and to order the transfer or delivery of commodity futures contracts and
options on commodities futures contracts to any other Futures Commission Merchant and/or to
order the transfer of record of any securities, or contracts, or titles to any name selected by any of
the said officers, employees or agents; to affix the corporate seal to any documents or agreements,
or otherwise; to endorse any securities and/or contracts in order to pass title thereto; to direct the sale

*If margin accounts are not being authorized, please delete and initial the deletion.

**If either the transactions in (a) or (b) are not being authorized please delete the non-authorized activities and initial the deletion.

- 2 -

Rev. 1/83

or exercise of any rights with respect to any securities; to sign for the Corporation all releases, powers of attorney and/or other documents in connection with any such account, and to agree to any terms or conditions to control any such account; to direct Bear Stearns to surrender any securities to the proper agent or party for the purpose of effecting any exchange or conversion, or otherwise; to accept delivery of any securities and/or commodity futures contracts; to appoint any other person or persons to do any and all things which any of the said officers, employees or agents is hereby empowered to do, and generally to do and take all action necessary in connection with the account, or considered desirable by such officer, employee or agent with respect thereto; and further

RESOLVED, That Bear Stearns may deal with any and all of the persons directly or indirectly by the foregoing resolutions empowered, as though they were dealing with the Corporation directly; and further

RESOLVED, That the Secretary of the Corporation be and he hereby is authorized, empowered and directed to certify, under the seal of the Corporation, or otherwise, to Bear Stearns:
    (a) a true copy of these resolutions;
    (b) specimen signatures of each and every person by these resolutions empowered;
    (c) a certificate that the Corporation is duly organized and existing, that its charter empowers it to transact the business by these resolutions defined, and that no limitation has been imposed upon such powers by the By-Laws or otherwise; and further

RESOLVED, That Bear Stearns may rely upon any certification given in accordance with these resolutions, as continuing fully effective unless and until Bear Stearns shall receive due written notice of a change in or the rescission of the authority so evidenced and dispatched; receipt of any other form of notice shall not constitute a waiver of this provision, nor shall the fact that any person hereby empowered ceases to be an officer of the Corporation or becomes an officer under some other title in any way affect the powers hereby confirmed. The failure to supply any specimen signature shall not invalidate any transaction if the transaction is in accordance with authority actually granted; and further

RESOLVED, That in the event of any change in the office or powers of persons hereby empowered, the Secretary shall certify such changes to Bear Stearns in writing in the manner herein-above provided, which notification, when received, shall be adequate both to terminate the powers of the persons theretofore authorized and to empower the persons thereby substituted; and further

RESOLVED, That the foregoing resolutions and the certificates actually furnished to Bear Stearns by the Secretary of the Corporation pursuant thereto, be and they hereby are made irrevocable until written notice of revocation thereof shall have been received by Bear Stearns; and further

- 3 -

Rev. 1/97

RESOLVED, That the foregoing resolutions shall apply not only to transactions and/or agreements with Bear Stearns which may take place after their adoption, but also those which may have been made or entered into prior to their adoption, all of which, together with the action of such officers or agents of the Corporation who have undertaken or entered into them, are hereby ratified, approved and confirmed.

## CERTIFICATE

The undersigned President (or Vice President) and Secretary of the Corporation do hereby SEVERALLY CERTIFY:

(a) That attached hereto is a true copy of the resolutions adopted at a duly constituted meeting of the Board of Directors of the Corporation, held on the fifth day of November , 1987;

(b) That the persons listed below hold the positions set forth opposite their names and are empowered by those resolutions;

| Name | Title |
|---|---|
| Albert W. Vilar | President |
| Gary A. Tanaka | Vice President |

**SUPERSEDED**
DATE: 4/9/0?
BY: (mmw)

(c) That the specimen signatures of each and every person empowered by those resolutions are as follows:

(d) That the Corporation is duly organized and existing, that its Certificate of Incorporation empowers it to transact the business by the attached resolutions defined, and that no limitation has been imposed upon such powers by the By-Laws or otherwise.

IN WITNESS WHEREOF, the Corporation has caused its corporate name to be signed hereto by its President or Vice President and its corporate seal to be hereunto affixed and attested by its Secretary, this 5th day of November , 19 87.

Name of Corporation

By: _____
(President or Vice-President)

Attest:

_____
(Secretary)

- 4 -

Rev. 1/87

*70 P (478)*
*102-01495*

# BEAR STEARNS

## AUTHORIZATION TO USE FAXED COMMUNICATIONS

The undersigned hereby authorizes Bear, Stearns Securities Corp. ("BSSC") and BSSC hereby agrees, under the following terms and conditions, to accept and act upon trade reports, instructions and documents (collectively, "Communications") transmitted via facsimile ("Fax") by the undersigned or its duly authorized agent. Notwithstanding the foregoing, Communications given by the undersigned's agent may not be accepted unless evidence of the agent's authority has been provided to BSSC.

In consideration of BSSC agreeing to accept Communications transmitted via Fax, the undersigned agrees to release, discharge, indemnify and hold harmless BSSC, its successors and assigns and their respective officers, directors and employees from and against and pay promptly on demand all loss, liability, damage, claim, cost and expense (including attorneys' fees and expenses) arising out of or incurred in connection with BSSC acting in accordance with such Communications transmitted via Fax. The undersigned hereby accepts all risk associated with the foregoing authorization and waives any requirement that BSSC confirm at any time, orally or in writing, the authenticity of such Faxes or signatures thereon prior to acting in accordance therewith.

This authorization, release and indemnity shall continue in full force and effect until revoked by the undersigned sending a manually-executed (not faxed) written notice to the attention of the Margin Supervisor at BSSC, Professional Clearance Department, One Metrotech Center North, Brooklyn, NY 11201-3859, with a copy to the Legal Department, 245 Park Ave, New York, NY 10167, attention: General Counsel. Such revocation shall be deemed effective upon receipt by BSSC.

This Agreement shall be governed by the laws of the State of New York without reference to its conflicts of law provisions. Any dispute arising out of this Agreement shall be resolved as provided in the BSSC form of Professional Account Agreement between the parties which is incorporated herein by reference.

☐ The undersigned does NOT authorize Bear, Stearns Securities Corp. to accept instructions transmitted via facsimile (fax).

NAME OF ACCOUNT: *Package Technology Growth Fund II*

BY: _____     DATE: *5/30/00*
        (Authorized Signatory)

*Director*
        Signatory's Title

*Robert W. Klein*
        Printed Name of Signatory

06-16-2005   05:57am   From-AMERINDO TRADING                4152491552                T-808   P.002/002   F-649

# BEAR STEARNS

BEAR, STEARNS SECURITIES CORP.
One Metrotech Center North
Brooklyn, New York 11201-3859

### Trading Authorization Limited to Purchase and Sales
### Of Securities, Futures, Foreign Currencies
### And Options

Account Title:  Amerindo Technology Growth Fund II          Account Number(s): 10201485

The undersigned hereby authorizes  Darran Leavitt                                                    as the undersigned's agent
(Print Name of Agent and Attorney-in-Fact)

and attorney-in-fact (the "Agent") with full power and authority on the undersigned's behalf to buy, sell (including short sales) and trade in stocks, bonds, options (including uncovered option writing), and any other securities and commodities, and contracts relating to the same (including foreign futures, foreign options contracts, over-the-counter foreign currency, spot, forward and foreign currency option contracts), on margin or otherwise, and to enter into securities Repurchase and securities reverse repurchase transactions in accordance with your terms and conditions, for the undersigned's account(s) and risk, and in the undersigned's name or number on the books of Bear, Stearns Securities Corp. ("Bear Stearns Securities"), a Subsidiary of Bear, Stearns & Co., Inc. (Bear Stearns"). If more than one Agent is designated, the undersigned authorizes each Agent to act severally; that is, each Agent alone shall be able to exercise the Powers conferred hereby.

In all such purchases, sales or transactions, Bear Stearns Securities and whenever applicable, Bear Stearns (hereinafter sometimes referred collectively as the "Brokers") is authorized to follow the instructions of the Agent in every respect concerning the undersigned's account(s) with Bear Stearns Securities. The Agent is authorized to act for the undersigned and on the undersigned's behalf, in the same manner and with the same force and effect as the undersigned, with respect to such purchase, sales or transactions in the account(s).

The undersigned hereby agrees to indemnify and hold the Brokers, their successors, affiliates and assigns (the "Indemnified Parties") harmless from, and to pay the Indemnified Parties promptly on demand any and all losses, costs or expenses incurred in connection with the use of this trading authorization, including any debit balance in the undersigned's account(s). This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which Bear Stearns Securities or any of the Indemnified

Parties may have under any other agreement(s) between the undersigned and Bear Stearns Securities and/or any of the Indemnified Parties.

This authorization and indemnity is a continuing one which shall not be affected by the subsequent disability or incompetence of the undersigned and shall remain in force and effect until revoked by the undersigned by a written notice received at the Bear Stearns Securities office at One Metrotech Center North, Brooklyn, New York 11201-3859 or until Bear Stearns Securities receives actual notice of the death, dissolution, or insolvency of the undersigned (or if two customers' sign, the death, dissolution, or insolvency of either one), and shall enure to the benefit of the Brokers, their affiliates or any successors firm or firms, and the assigns of the Brokers or any of their respective successor firms.

Because Bear Stearns Securities is acting as clearing agent for a broker-dealer, and/or futures Introducing Broker and/or Futures Commission Merchant (hereinafter referred to as "IB" and "FCM", respectively) and any entity introducing or otherwise acting as a broker or dealer in regards to foreign currency spot, forward or options contracts ("FX Entity"), this authorization and indemnity shall enure to the benefit of the undersigned's broker-dealer, IB, FCM and/or FX Entity, their successors and assigns and all references herein to the Brokers shall be deemed references both to the Brokers and the undersigned's broker-dealer, IB, FCM and/or FX Entity. The forgoing notwithstanding, the undersigned acknowledges and agrees that if the Agent designated herein is an employee or agent of the undersigned's broker-dealer, IB, FCM and/or FX Entity, such Agent is neither an agent of nor under the control of the Brokers and the Brokers shall bear no liability for any transactions effected pursuant to the authority granted herein. The terms of this authorization shall be governed by the laws of the State of New York.

_____          _____
(Customer Signature)                          (Joint Party's Signature)

Amerindo Investment Advisors, Inc. by Gary Tanaka
(Print Customer Name)                         (Print Joint Part's Name)

_____6/15/05_____
(Date)                                        (Date)

THIS QUESTION MUST BE ANSWERED: Is the Agent a person associated with any member, allied member of member organization of any securities or commodities exchange or a person associated with any broker-dealer or financial institution?

No
_____          _____
(Yes or No)                       (Name of Firm)

Agents Acceptance: _____  6/16/05

_____
FOR FUTURES CLIENTS ONLY

I hereby acknowledge that:

☐  I have received a copy of the disclosure document of the party named above prepared pursuant to CFTC Regulation 4.31.

☐  The agent named above has not furnished me with a disclosure document prepared to Regulation 4.31 because said party has advised that he/she/it is not registered with the CFTC as Commodity Trading Advisor and is not required to be so registered.

☐  I am aware of the rules applicable to over-the-counter foreign currency, forward and option transactions. I am an "Eligible Swap Participant" as defined in CFTC Regulation 4.31. (Please check appropriate boxes)

2000 – 2227 (Rev. 3/96)

# BEAR STEARNS

BEAR, STEARNS SECURITIES CORP
One Metrotech Center North
Brooklyn, New York 11201-3859

### Trading Authorization Limited to Purchase and Sales
### Of Securities, Futures, Foreign Currencies
### And Options

Account Title:  Amerindo Technology Growth Fund II        Account Number(s):  10201495

The undersigned hereby authorizes Darren Leavitt _____ as the undersigned's agent
(Print Name of Agent and Attorney-in-Fact)

and attorney-in-fact (the "Agent") with full power and authority on the undersigned's behalf to buy, sell (including short sales) and trade in stocks, bonds, options (including uncovered option writing), and any other securities and commodities, and contracts relating to the same (including foreign futures, foreign options contracts, over-the-counter foreign currency, spot, forward and foreign currency option contracts), on margin or otherwise, and to enter into securities Repurchase and securities reverse repurchase transactions in accordance with your terms and conditions, for the undersigned's account(s) and risk, and in the undersigned's name or number on the books of Bear, Stearns Securities Corp. ("Bear Stearns Securities"), a Subsidiary of Bear, Stearns & Co., Inc. (Bear Stearns"). If more than one Agent is designated, the undersigned authorizes each Agent to act severally; that is, each Agent alone shall be able to exercise the Powers conferred hereby.

In all such purchases, sales or transactions, Bear Stearns Securities and whenever applicable, Bear Stearns (hereinafter sometimes referred collectively as the "Brokers") is authorized to follow the instructions of the Agent in every respect concerning the undersigned's account(s) with Bear Stearns Securities. The Agent is authorized to act for the undersigned and on the undersigned's behalf, in the same manner and with the same force and effect as the undersigned, with respect to such purchase, sales or transactions in the account(s).

The undersigned hereby agrees to indemnity and hold the Brokers, their successors, affiliates and assigns (the "Indemnified Parties") harmless from, and to pay the Indemnified Parties promptly on demand any and all losses, costs or expenses incurred in connection with the use of this trading authorization, including any debit balance in the undersigned's account(s). This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which Bear Stearns Securities or any of the Indemnified

Parties may have under any other agreement(s) between the undersigned and Bear Stearns Securities and/or any of the Indemnified Parties.

This authorization and indemnity is a continuing one which shall not be affected by the subsequent disability or incompetence of the undersigned and shall remain in force and effect until revoked by the undersigned by a written notice received at the Bear Stearns Securities office at One Metrotech Center North, Brooklyn, New York 11201-3859 or until Bear Stearns Securities receives actual notice of the death, dissolution, or insolvency of the undersigned (or if two customers sign, the death, dissolution, or insolvency of either one), and shall enure to the benefit of the Brokers, their affiliates or any successors firm or firms, and the assigns of the Brokers or any of their respective successor firms.

Because Bear Stearns Securities is acting as clearing agent for a broker-dealer, and/or futures Introducing Broker and/or Futures Commission Merchant (hereinafter referred to as "IB" and "FCM", respectively) and any entity introducing or otherwise acting as a broker or dealer in regards to foreign currency spot, forward or options contracts ("FX Entity"), this authorization and indemnity shall enure to the benefit of the undersigned's broker-dealer, IB, FCM and/or FX Entity, their successors and assigns and all references herein to the Brokers shall be deemed references both to the Brokers and the undersigned's broker-dealer, IB, FCM and/or FX Entity. The forgoing notwithstanding, the undersigned acknowledges and agrees that if the Agent designated herein is an employee or agent of the undersigned's broker-dealer, IB, FCM and/or FX Entity, such Agent is neither an agent of nor under the control of the Brokers and the Brokers shall bear no liability for any transactions effected pursuant to the authority granted herein. **The terms of this authorization shall be governed by the laws of the State of New York.**

_____                    _____
(Customer Signature)                                (Joint Party's Signature)

Amerindo Investment Advisors, Inc. by Gary Tanaka
(Print Customer Name)                               (Print Joint Part's Name)

6/15/05
_____                    _____
(Date)                                              (Date)

**THIS QUESTION MUST BE ANSWERED:** Is the Agent a person associated with any member, allied member of member organization of any securities or commodities exchange or a person associated with any broker-dealer or financial institution?

No

_____                    _____
(Yes or No)                    (Name of Firm)

Agents Acceptance: _____

---

#### FOR FUTURES CLIENTS ONLY

I hereby acknowledge that:

☐  I have received a copy of the disclosure document of the party named above prepared pursuant to CFTC Regulation 4.31.

☐  The agent named above has not furnished me with a disclosure document prepared to Regulation 4.31 because said party has advised that he/she/it is not registered with the CFTC as Commodity Trading Advisor and is not required to be so registered

☐  I am aware of the rules applicable to over-the-counter foreign currency, forward and option transactions  I am an "Eligible Swap Participant" as defined in CFTC Regulation 4.31. (Please check appropriate boxes)

2000 – 2227 (Rev. 3/96)

EXHIBIT D

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York 10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

Month End Closing Method: FIFO

| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

AMERINDO **TECHNOLOGY GROWTH**
FUND II INC
C/O CITITRUST (BAHAMAS) LTD
ATTN: MICHAEL R FIELDS
PO BOX N 1576-THOMPSON BLVD
NASSAU BAHAMAS

## What's In This Statement

Financial Summary..................................................3
Your Portfolio Holdings..........................................5
Your Messages......................................................13

## Your Portfolio at a Glance

| TOTAL VALUE OF SECURITIES THIS PERIOD | 5,053,950 |
| NET CREDIT BALANCE | 20,588,276 |
| NET EQUITY THIS PERIOD | $25,642,226 |
| NET EQUITY LAST STATEMENT | 25,869,158 |
| CHANGE SINCE LAST STATEMENT | -226,932 |

*This portfolio includes one or more unpriced securities that are not reflected in the Total Value of Securities and the Net Equity This Period.

There are no "Stop Loss" orders or other pending buy or sell open orders on file for your account.

## Market Value of Your Portfolio

Cash & Money Mkt Fds
$20,588,276
$20,588,276

Equities
$5,053,950
$5,280,882

■ Current market value
☐ Last statement's market value

**SIPC** This summary is for informational purposes only. It is not intended as a tax document. This statement should be retained for your records. See reverse side for important information.

CLEARING AGENT: J.P. MORGAN CLEARING CORP.
3 CHASE METROTECH CENTER, BROOKLYN, NY 11245

AMERINDO TECHNOLOGY GROWTH

2 of 14

STATEMENT BACKER IS PRINTED ON THIS PAGE

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York 10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| | |
|---|---|
| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MGT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Portfolio Value

| Assets | THIS PERIOD | LAST PERIOD |
|---|---|---|
| Net Credit Balance | 20,588,275.97 | 20,588,275.97 |
| Equities | 5,053,950.00 | 5,280,882.00 |
| Total Assets | $25,642,225.97 | $25,869,157.97 |
| NET PORTFOLIO VALUE | $25,642,225.97 | $25,869,157.97 |

## Cash Flow Analysis

| | THIS PERIOD | THIS YEAR |
|---|---|---|
| Opening Cash/Sweep Prog. | $20,588,275.97 | $20,588,275.97 |
| Closing Cash/Sweep Prog. | $20,588,275.97 | $20,588,275.97 |

**Your Portfolio Allocation**



Equities 19%

Cash & MMF 81%

Unstudued portions denote debit balance and/or short market values. The allocation percentage is derived from the absolute market value of your portfolio.

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York  10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| | |
|---|---|
| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MGT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

4 of 14

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York 10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| | |
|---|---|
| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your Portfolio Holdings

### CASH & MONEY MARKET FUNDS

| DESCRIPTION | TYPE | SYMBOL/CUSIP | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| CASH BALANCE | | | | | 20,588,276 | | |
| | CASH | | | | 487,130 | | |
| | MRGN | | | | 20,101,146 | | |
| TOTAL CASH & MONEY MARKET FUNDS | | | | | $20,588,276 | $0 | |

### EQUITIES

### Equities & Options

| DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| NEWMARKET LATIN AMERICA INC | 65158P107 | MRGN | 21,488 | Unpriced | | | |
| SIRIUS XM RADIO INC | SIRI | MRGN | 299,000 | 2.3100 | 690,690 | | |
| ZONETRADER.COM INC SER B CV PFD RSTD | 9300335 | CASH | 1,653,629 | Unpriced | | | |
| ARK INTERFACE II INC RSTD | 9300388 | CASH | 289,855 | Unpriced | | | |
| CELLOMICS INC RSTD | 9300528 | CASH | 2,323,124 | Unpriced | | | |
| TROIKA NETWORKS INC RSTD | 9301157 | CASH | 7,974 | Unpriced | | | |
| ILLUMINA INC RSTD | 9301183 | MRGN | 7,148 | 52.6100 | 376,056 | | |
| DOVEBID INC RSTD | 9301979 | CASH | 66,969 | Unpriced | | | |
| COUNTERPANE INTERNET SECURITY INC RSTD | 9302640 | MRGN | 62,828 | Unpriced | | | |
| ADERO,INC RSTD | 9311082 | CASH | 30,893 | Unpriced | | | |
| ADERO,INC RSTD | 9311082 | MRGN | 239,715 | Unpriced | | | |
| SPARKS.COM INC SERIES D PFD RSTD | 9311552 | CASH | 1,277,465 | Unpriced | | | |
| MYCFO INC SER C PFD RSTD | 9311669 | CASH | 1,606,623 | Unpriced | | | |

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York 10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| | |
|---|---|
| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MGT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your Portfolio Holdings   (continued)

### Equities & Options   (Continued)

| DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| MULTITUDE INC SERIES E CONV PFD RSTD | 9311702 | CASH | 646,579 | Unpriced | | | |
| ABGENIX INC RSTD | 9312234 | CASH | 5,262 | Unpriced | | | |
| BOWSTREET INC SERIES A-2CONV PFD RSTD | 9312427 | MRGN | 89,055.89 | Unpriced | | | |
| CIDRA CORP NON-VTGRED PFD RSTD | 9313736 | MRGN | 3,305 | Unpriced | | | |
| CIDRA CORP CLASS A COM RSTD | 9313737 | MRGN | 112,054 | Unpriced | | | |
| METRICSTREAM INC SERIES A-1 PFD RSTD | 9314585 | CASH | 286,598 | Unpriced | | | |
| THERAVANCE INC RSTD | 9381809 | CASH | 204,472 | 19.5000 | 3,987,204 | | |
| Total Equities& Options | | | | | $5,053,950 | | $0 |

### Preferred Equities

| DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| CELLOMICS INC SER NNN PFD RSTD | 9300526 | CASH | 2,323,124 | Unpriced | | | |
| ANDA NETWORKS INC SER-D PFD-RSTD | 9300641 | MRGN | 316,680 | Unpriced | | | |
| ARRAYCOMM INC SER-E PFD-RSTD | 9300648 | CASH | 537,350 | Unpriced | | | |
| NEXSI CP SER C PFD RSTD | 9300774 | CASH | 487,518 | Unpriced | | | |
| ARRAYCOMM INC SER-F PFD-RSTD | 9300776 | CASH | 121,212 | Unpriced | | | |
| MAPLE OPTICAL SYSTEMS INC-RSTD  SERIES  B PFD | 9300841 | CASH | 783,840 | Unpriced | | | |

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York 10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| | |
|---|---|
| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your Portfolio Holdings   (continued)

### Preferred Equities   (Continued)

| DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| CHORUM TECH. SER.E PFD-RSTD | 9301136 | MRGN | 72,808 | Unpriced | | | |
| MAYAN NETWORK CORP SER-D PFD-RSTD | 9301316 | CASH | 845,313 | Unpriced | | | |
| INTOUCH GROUP INC SER B PFD RSTD | 9301434 | CASH | 128,334 | Unpriced | | | |
| CENTERPOINT BROADBAND TECH. INC SER-D PFD-RSTD | 9301538 | MRGN | 192,692 | Unpriced | | | |
| INTOUCH GROUP INC SER A PFD RSTD | 9301754 | CASH | 607,600 | Unpriced | | | |
| INTOUCH GROUP INC SER-D PFD-RSTD | 9301770 | CASH | 113,636 | Unpriced | | | |
| TROIKA NETWORKS INC SER C PFD RSTD | 9301784 | CASH | 797,412 | Unpriced | | | |
| FORCE10 NETWORKS INC SER B-2 PFD RSTD | 9303049 | MRGN | 424,359 | Unpriced | | | |
| FINANCIAL ENGINES INC SER E PFD RSTD | 9303235 | CASH | 19,234 | Unpriced | | | |
| IOSPAN WIRELESS INC SER C PFD RSTD | 9304115 | CASH | 487,089 | Unpriced | | | |
| COLO.COM SER C PFD RSTD | 9304410 | CASH | 354,644 | Unpriced | | | |
| ALLEGIS CORP SER-E PFD-RSTD | 9305478 | MRGN | 122,149 | Unpriced | | | |
| ETHNICGROCER.COM SER-C PFD-RSTD | 9305786 | CASH | 198,020 | Unpriced | | | |
| FITLINXX INC SERIES B PFD RSTD | 9305787 | CASH | 660,917 | Unpriced | | | |
| FINANCIAL ENGINES INC SERIES D PFD RSTD | 9305810 | CASH | 202,340 | Unpriced | | | |

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York  10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| | |
|---|---|
| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your Portfolio Holdings   (continued)

### Preferred Equities   (Continued)

| DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| ESSENTIAL.COM INC SER-C CV PFD-RSTD | 9305856 | CASH | 256,441 | Unpriced | | | |
| ZAMBEEL INC SER B-2 PFD RSTD | 9305937 | CASH | 603,611 | Unpriced | | | |
| ADEXA INC SER C PFD RSTD | 9305951 | MRGN | 78,740 | Unpriced | | | |
| 3PARDATA INC SER A-3 PFD RSTD | 9306077 | CASH | 141,518 | Unpriced | | | |
| 3PARDATA INC SER A-2 PFD RSTD | 9306080 | CASH | 34,852 | Unpriced | | | |
| STRUCTURAL GENOMIX INC SERIES A PFD RSTD | 9310107 | MRGN | 74,600 | Unpriced | | | |
| PROPERTYFIRST.COM INC SER-B CONV PFD-RSTD | 9310138 | CASH | 424,251 | Unpriced | | | |
| CALIENT NETWORKS INC SERIES A-1 PFD RSTD | 9310150 | CASH | 20,956 | Unpriced | | | |
| LOCUS DISCOVERY INC SERIES C PFD | 9310228 | CASH | 1,475,055 | Unpriced | | | |
| STRUCTURAL GENOMIX INC SERIES B PFD RSTD | 9310266 | MRGN | 8,727 | Unpriced | | | |
| COREEXPRESS INC PFD-RSTD | 9310492 | CASH | 323,729 | Unpriced | | | |
| 800.COM.INC.SER-C PFD-RSTD | 9310701 | MRGN | 487,430 | Unpriced | | | |
| ADAUCTION.COM,INC. SER-D PFD-RSTD | 9310705 | MRGN | 555,000 | Unpriced | | | |
| FURNITURE.COM INC SER-E CV PFD RSTD | 9310820 | CASH | 130,000 | Unpriced | | | |
| CURRENEX INC SERIES C PFD RSTD | 9310851 | CASH | 606,183 | Unpriced | | | |
| MAPLE OPTICAL SYSTEMS INC SER-C PFD-RSTD | 9310910 | CASH | 241,875 | Unpriced | | | |
| KNOWLEDGEPLANET.COM SER-B RSTD | 9310974 | CASH | 580,118 | Unpriced | | | |

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York 10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your Portfolio Holdings   (continued)

### Preferred Equities   (Continued)

| DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| MERCATA INC SER-C PFD-RSTD | 9310981 | CASH | 252,500 | Unpriced | | | |
| ADAUCTION.COM,INC. SERIES E PFD RSTD | 9311063 | MRGN | 130,779 | Unpriced | | | |
| 800.COM,INC.SERIES D PFD RSTD | 9311100 | MRGN | 133,333 | Unpriced | | | |
| AGILITY COMMUNICATIONS INC SERIES C PFD RSTD | 9311119 | MRGN | 402,846 | Unpriced | | | |
| JETSTREAM COMM.INC SER-H PFD-RSTD | 9311170 | CASH | 15,669 | Unpriced | | | |
| HYPERCHIP INC CL-C PFD-RSTD | 9311173 | CASH | 1,136,367 | Unpriced | | | |
| APPLIED SCIENCE FICTION INC SERIES D PFD RSTD | 9311175 | MRGN | 205,174 | Unpriced | | | |
| PROCKET NETWORKS INC SER-C PFD RSTD | 9311189 | CASH | 877,309 | Unpriced | | | |
| ANCESTRY.COM INC SERIES B PFD RSTD | 9311297 | MRGN | 104,707 | Unpriced | | | |
| ALIDIAN NETWORKS INC RSTD SERIES B PFD | 9311324 | MRGN | 1,138,130 | Unpriced | | | |
| SEECOMMERCE SERIES E PFD RSTD | 9311336 | CASH | 28,654 | Unpriced | | | |
| HOMESTEAD.COM INC SERIES C PFD RSTD | 9311431 | CASH | 152,362 | Unpriced | | | |
| AXSUN TECHNOLOGIES INC SER C CV PFD RSTD | 9311432 | CASH | 205,670 | Unpriced | | | |
| ARK INTERFACE II INC SER B PFD RSTD | 9311442 | CASH | 429,292 | Unpriced | | | |
| ARK INTERFACE II INC SER A PFD RSTD | 9311472 | CASH | 1,603,132 | Unpriced | | | |
| REALNAMES CORP SER C PFD RSTD | 9311524 | CASH | 521,500 | Unpriced | | | |

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York 10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| | |
|---|---|
| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your Portfolio Holdings   (continued)

### Preferred Equities   (Continued)

| DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| REALNAMES CORP SER E PFD RSTD RSTD | 9311525 | CASH | 249,200 | Unpriced | | | |
| CENTRAL CORP SERIES B PFD RSTD | 9311533 | CASH | 1,105,000 | Unpriced | | | |
| APPLIED SCIENCE FICTION INC SER E PFD RSTD | 9311546 | MRGN | 500,000 | Unpriced | | | |
| CODEON CORP SER-D-CV PFD-RSTD | 9311548 | MRGN | 100,587 | Unpriced | | | |
| CHORUM TECHNOLOGIES INC SER D PFD RSTD | 9311551 | MRGN | 749,088 | Unpriced | | | |
| COMERGENT TECHNOLOGIES INC SER B PFD RSTD | 9311594 | CASH | 364,844 | Unpriced | | | |
| CYBERMEDICA INC SER B PFDS RSTD | 9311596 | CASH | 1,767,184 | Unpriced | | | |
| DIGITAL CHEF INC SER E PFD RSTD | 9311597 | CASH | 46,296 | Unpriced | | | |
| DOUBLETWIST INC SER D PFD RSTD | 9311598 | CASH | 651,162 | Unpriced | | | |
| EBAGS SER B PFD RSTD | 9311605 | CASH | 528,814 | Unpriced | | | |
| SPARKS.COM INC SER-C PFD-RSTD | 9311635 | CASH | 511,570 | Unpriced | | | |
| IMPRESSE CORP SER-C PFD-RSTD | 9311670 | CASH | 161,000 | Unpriced | | | |
| FURNITURE.COM INC SER-C PFD -RSTD | 9311673 | CASH | 726,982 | Unpriced | | | |
| FITLINXX INC SER-C PFD-RSTD | 9311674 | CASH | 86,222 | Unpriced | | | |
| INTOUCH GROUP INC SER-C PFD-RSTD | 9311682 | CASH | 158,334 | Unpriced | | | |
| CIELO COMMUNICATIONS INC SER B PFD RSTD | 9311697 | MRGN | 385,000 | Unpriced | | | |
| MIADORA INC SER-B PFD-RSTD | 9311705 | CASH | 141,121 | Unpriced | | | |

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York  10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your Portfolio Holdings   (continued)

### Preferred Equities   (Continued)

| DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| MERCATA INC SER-B PFD-RSTD | 9311706 | CASH | 270,000 | Unpriced | | | |
| KEEN.COM INC SER-C PFD-RSTD | 9311711 | CASH | 352,728 | Unpriced | | | |
| KOZMO.COM INC SER-F PFD-RSTD | 9311718 | CASH | 248,173 | Unpriced | | | |
| KVM TECHNOLOGIES INC SER-B PFD RSTD | 9311720 | CASH | 393,785 | Unpriced | | | |
| JETSTREAM COMMUNICATIONS INC SER-G PFD-RSTD | 9311737 | CASH | 136,956 | Unpriced | | | |
| LOCUS PHARMACEUTICALS  INC SERIES D PFD RSTD | 9313303 | CASH | 250,000 | Unpriced | | | |
| CIDRA CORP SERIES D CONV PFD RSTD | 9313738 | MRGN | 19,700 | Unpriced | | | |
| TELLME NETWORKS INC SER D PFD RSTD | 9380072 | CASH | 218,965 | Unpriced | | | |
| APPIAN COMMUNICATIONS SER-D CV PFD RSTD | 9380223 | MRGN | 139,464 | Unpriced | | | |
| ZOHO CORP SER-C PFD-RSTD | 9380248 | CASH | 268,127 | Unpriced | | | |
| ENSIM CORP SER-C PFD RSTD | 9380391 | CASH | 219,808 | Unpriced | | | |
| ASERA INC SER-C PFD-RSTD | 9380449 | CASH | 56,048 | Unpriced | | | |
| ONFIBER COMMUNICATIONS INC SER-B PFD-RSTD | 9380586 | CASH | 490,100 | Unpriced | | | |
| MOBILIAN CP SER C PFD RSTD | 9380651 | CASH | 140,500 | Unpriced | | | |
| WHEELHOUSE CORP SER B CV PFD RSTD | 9381271 | CASH | 255,271 | Unpriced | | | |
| ULTRABAND FIBER OPTICS INC SER C PFD RSTD | 9381559 | CASH | 945,627 | Unpriced | | | |

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York  10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| | |
|---|---|
| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| | |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your Portfolio Holdings   (continued)

### Preferred Equities   (Continued)

| DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | QUANTITY | PRICE | MARKET VALUE | ESTIMATED ANNUAL INCOME | ESTIMATED YIELD (%) |
|---|---|---|---|---|---|---|---|
| BROADBAND OFFICE INC SER-C PFD RSTD | 9381647 | CASH | 326,526 | Unpriced | $0 | $0 | |
| Total Preferred Equities | | | | | $0 | $0 | |
| TOTAL EQUITIES | | | | | $5,053,950 | | |
| YOUR PRICED PORTFOLIO HOLDINGS | | | | | $25,642,226 | | |

Case 1:12-cv-05240-RJS   Document 1-1   Filed 07/05/12   Page 86 of 87

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York 10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your messages



**Important Information For Clients Holding Restricted Securities:**
Restricted Securities (typically noted as "Restricted" or "RSTD" in the security description) have not been registered under the Securities Act of 1933 and may not be "freely traded." Since restricted securities are subject to certain restrictions which may render them illiquid or less liquid than freely-tradeable shares, there can be no assurance a secondary market exists. While we typically use the value of the registered/unrestricted security of the same issuer and same class for statement (and other) reporting purposes, the price realizable in a sale of the securities may be less than the "Market Value" indicated and could be zero. No attempt has been made to independently value the specific security subject to its restriction. Additionally, inclusion of pricing of these holdings will result in the aggregated value of your portfolio as reflected on this report being overstated by an amount equal to the difference (if any) between the value of the freely-traded underlying security and the actual value of your restricted shares. For additional information on pricing, please see "Market Prices" on the back of your account statement.

Please report any difference or non-receipt of checks or stocks, indicated as delivered to you, to Client Services at 800-634-1428; or write to Client Services at J.P. Morgan Clearing Corp. Three Chase Metrotech Center, Brooklyn, N.Y. 11245-0001

J.P. Morgan Securities LLC's (JPMS LLC) and J.P. Morgan Clearing Corp.'s (JPMCC) Net Capital and Net Capital Requirements

At December 31, 2011, JPMS LLC's net capital of $11.1 billion exceeded the minimum regulatory net capital requirement of $1.6 billion by $9.5 billion. JPMCC's net capital of $7.4 billion was approximately 7.7% of aggregate debit items and exceeded the minimum regulatory net capital requirement of $1.9 billion by $5.5 billion.

Complete copies of JPMS LLC's and JPMCC's individual audited Statement of Financial Condition may be obtained, at no cost, by accessing the following JPMorgan Chase & Co. website address:

http://investor.shareholder.com/jpmorganchase/financial-condition.cfm

Additionally, you may call the following toll-free phone number to request a hard copy of the statement: 1-866-576-1300.



You are advised to promptly report any inaccuracy or discrepancy in your account to your broker and J.P. Morgan Clearing Corp. ("JPMCC") at the telephone numbers listed on this statement. In order to protect your rights, including any rights under the Securities Investor Protection Act ("SIPA"), any such communications should be reconfirmed in writing to your broker and JPMCC at the addresses which appear on the front of this statement.

# J.P.Morgan

OFFICE SERVICING YOUR ACCOUNT
J.P. Morgan Securities LLC
383 Madison Avenue
New York, New York  10179
(212) 270-6000

AMERINDO TECHNOLOGY GROWTH

| | |
|---|---|
| STATEMENT PERIOD | March 1, 2012 |
| THROUGH | March 30, 2012 |
| ACCOUNT NUMBER | 102-01495 MOT |
| TAXPAYER NUMBER | Not Applicable |
| LAST STATEMENT | December 30, 2011 |

## Your messages        (continued)



Important Information Regarding Auction Rate Securities (ARS). ARS are debt or preferred securities with an interest or dividend rate reset periodically in an auction. Although there may be daily, weekly and monthly resets, there is no guarantee that there will be liquidity. If there are not enough bids at an auction to redeem the securities available for sale, the result may be a failed auction. In the event of a failed auction, there is no assurance that a secondary market will develop or that the security will trade at par or any other price reflected on statements. Accordingly, investors should not rely on pricing information appearing in their statements with respect to ARS. Where J.P. Morgan Clearing Corp. was unable to obtain a price from an outside service for a particular ARS, the price column on your statement will indicate "unpriced."

****** End of Statement ******

STOP