*Alfred Heitkonig*

PO Box 9024038 San Juan, Puerto Rico 00902    alfredo@ahfs.biz

August 22, 2022

Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: SEC v. Amerindo Investment Advisors., et al, 05 Civ. 5231 (RJS) Docket No. 815

Dear Judge Sullivan,

This letter is submitted in response to your Orders dated July 26, 2022 (Docket No. 815) and August 2, 2002 (Docket No. 820).

The SEC's consent to a pro rata distribution of the Garnishment Assets to the investor claimants is a huge step in the right direction and a welcomed gesture.

As I have previously documented and submitted to the Court from 1999 thru 2005 the Defendants drastically reduced my agreed and "guaranteed" GFRDA interest rate of 15% down to 5% and further ignored my repeated GFRDA redemption demands. By unilaterally reducing my "guaranteed" interest and refusing my redemption requests, the Defendants in effect seized my monies to fund Amerindo operations, and these monies remained in the Amerindo accounts now liquidated and/or known as the Garnishment Assets and others.

My Amerindo claim was not paid in full by the Receiver who relied solely upon the inaccurate and erroneous statements of account prepared by the Defendants as a basis to approve my "allowable" claim. My Amerindo statements grossly understated my GFRDA investment. I believe this must be settled prior to any distribution.

As I have documented and submitted to the Court (Docket #733 10/03/19), as a result of the actions of the Defendants, I remain due $1,617,716.96 in my GFRDA account as of May 2005, the closing of Amerindo operations. I also would like to advocate for my cousin, Mr Preetzmann Aggerholm, who is in Port au Prince, Haiti with very limited infrastructure available to him, as he has been put in the exact same position as I was by the Defendants. His Amerindo GFRDA statement in is understated by $242,096.08 as of May 2005, which amount remains owed to him. His case and the situation involving his unpaid claim are essentially the same as in my case described herein.

By refusing my redemption requests and refusing to return my GFRDA investment and instead commingling my monies into their Amerindo coffers, the Defendants in effect traced a direct line of my monies into the Amerindo funds and misappropriated this balance of my monies which was

generated by the withheld rate of interest I was due. In other words, the leftover Amerindo account monies such as the Garnishment Assets are overstated by my $1,617,716.96 and my cousin's $242,096.08 and our unpaid inflation adjustment. These sums represent the balance of monies the Defendants diverted by fraudulently reducing our guaranteed interest rate of return while refusing to return our GFRDA monies.

I believe that we are now at a similar juncture to that prior to the distribution of the inflation adjustment in mid 2017. The Court then received objections and alternative proposals from the Mayer and Marcus claimants, both of whom have advised the Court they intend to come forward now as well. The Markus claimants had proposed a distribution package that favored ATGF investors over GFRDA investors and the Court found that "[t]he stocks that compromise the Receiver's assets were purchased with the commingled funds of all investors- ATGF and GFRDA alike." (1). (Pls also refer to Exhibit B "The monies belong to the Amerindo Investors")

The Mayer claimants were seeking a distribution package to favor GFRDA investors and also to collect a judgement awarded via state court. The Court then stated that "[t]he Court's purpose in this distribution is "**to restore**" to the Allowed Investors"(our emphasis) that which was fraudulently diverted from….their custody and control." *Malek*, 397 F. App'x at 713"(2). I believe similar arguments may come forth again with the difference now that almost all of the Allowed Investors have had their claims satisfied and received a further inflation adjustment. I hope and pray that my diverted GFRDA monies will be restituted to me prior to any distribution of the Garnishment Assets.

I do not take issue with the Receiver as I believe he handled a daunting task well and I am grateful for the monies I have received thus far. As he explained it to me, the adopted methodology approved by the SEC was "a one size fits all" solution using the investor claimants' Amerindo statements to get restitution to the investor claimants as soon as possible due to the extended lapse of time in the case. At that point, eight to nine years after the Defendants' arrest, no one knew how much money was available to repay investor claims. It was then determined that once the initial distributions were made to the investor claimants, and the panorama of funds available for restitution was understood, then leftover claim issues would be addressed. Nearly four years elapsed and the issue of my diverted and misappropriated GFRDA monies was never discussed or addressed. Subsequently the Receiver wound down and concluded his activities with a balance in excess of $12,000,000 remaining in Receiver assets, which the Court had recognized were the commingled monies of the investors.

The SEC and AUSA were fully aware that the Amerindo statements of account were unreliable and possibly even fraudulent (pls see Exhibit A). As a matter of record, in 2012, the SEC informed the Court that "[D]ue to the inherent unreliability of Amerindo's account statements, the SEC staff respectfully suggests that the account statements alone cannot form a sufficiently reliable basis for determining investor claims."(Emphasis supplied (3)).

---

1. OPINION & ORDER filed on July14, 2017 in 05 Civ. 5231 (RJS) Pg.12
2. OPINION & ORDER filed on July14, 2017 in 05 Civ. 5231 (RJS) Pg.16
3. SECURITY AND EXCHANGE COMMISSION'S RESPONSE TO THE COURT'S FEBRUARY 7, 2012 ORDER filed on 2/21/12 in 05 Cr. 621 (RJS) 05 Civ. 5231 (LTS), pg. 4

Despite this knowledge, the following year the SEC advocated the Receiver's methodology which relied heavily (in my and my cousin's cases, relied exclusively) on the account statements to calculate the "allowable" or payable investor claims.

While I understand the need and reason for the methodology used by the Receiver to get the restitution process rolling, it is essentially unjust and inconceivable that the curtain be drawn and a position adopted that all investor claims were fully satisfied and paid by the Receiver when clearly in my case, I remain owed substantial amounts of money, due to the simple and obvious fact that my account statement grossly understated my GFRDA balance and the Receiver only considered my account statement to verify, value and ultimately to approve my allowable claim.

In their March 5, 2021 letter to the Court, the SEC discussed certain garnished assets and a forfeiture fund in response to Defendant Amerindo Technology Growth Fund II and stated that "[T]he Commission withdrew its forfeiture claim in favor of investors seeking to recover additional losses."(4) This is an important statement as it implies the SEC is aware that certain investors in fact have valid pending claims and the proposed resolution appears most gracious toward these investors.

In their latest submission to the Court advocating a pro-rata distribution to themselves and the investor claimants, the SEC says that "[t]he investors have already been paid their claim in full with an inflation adjustment."(5) This statement is incorrect as neither I or my cousin have been paid in full, our claims remain open with substantial amounts unpaid and the inflation adjustment was not applied. The SEC knew the Amerindo account statements were "inherently unreliable", yet they championed a restitution methodology used by the Receiver that relied mainly on these unreliable statements. As I have shown herein, in my claim and my cousin's claim, our Amerindo account statements were the only evidence used by the Receiver and thus the reason our claims have not been fully paid. This is unjust and must be rectified; I pray that Your Honor will order the full restitution of my claim and my cousin's claim including an inflation adjustment before any distribution of the Garnishment Assets is authorized.

I am also an ATGF investor. The Government did not investigate the ATGF investment vehicle and thus the Receiver relied mainly (upon belief in most cases, relied exclusively) on the investors' ATGF statements of account to approve and "allow" the investors' claims. Roughly 20 different ATGF claimants were "allowed" and paid different ATGF share prices. For example, one claimant received $65.22 per share for 91,993 ATGF shares, another received $72.55 per ATGF shares on 17,746 shares and yet another was paid $127.68 per share on 1957.98 shares. The average ATGF share price paid to the investor claimants was approximately $40 per share. I only received $20.80 per share on 90,000 ATGF shares. In my opinion, the excess of investor monies that remain in the Garnishment Assets and other may well contain unpaid ATGF investor monies as the Receiver relied on the mis-stated ATGF account statements to approve claims. Your Honor may consider an "ATGF pro rata distribution" for those investors who were paid a low ATGF share price on their allowed Amerindo claims.

---

4.  SECURITIES AND EXCHANGE COMMISSION LETTER TO THE COURT MARCH 5, 2022 filed on 3/5/21 in 05 Civ. 5231 (RJS) Pg. 2
5.  SECURITIES AND EXCHANGE COMMISSION APPLICATION (1) TO APPOINT MILLER KAPLAN ABASE AS TAX ADMINISTRATOR AND DISTRIBUTION AGENT, AND APPROVE A PRO-RATA DISTRIBUTION filed 8/01/22 in 05 Civ. 5231 (RJS) Pg.5

My comments on ATGF are an observation that have a strong probability considering the Defendants' fraud and record keeping and are submitted for your consideration. This remains in stark contrast to my GFRDA claim which is presented as absolute fact and remains owed to me without question.

In closing, I would like to highlight the irony that the Governments' case in chief, which successfully convicted the Defendants, focused on the GFRDA investment vehicle which included interest fraud, misappropriation and commingling of investor monies, yet now the Government, which includes both the SEC and the AUSA, refuse to acknowledge the inherent fraud, misappropriation and seizure of my funds in my GFRDA account perpetrated by the Defendants. I hope and pray that Your Honor will rule favorably to my cousin and myself so that our claims are finally paid in full and total justice can be done.

Respectfully Submitted,

Alfred Heitkonig

# EXHIBIT A

## AMERINDO STATEMENTS OF ACCOUNT ARE UNRELIABLE

"[T]he SEC staff respectfully submits that the information that the Courts have requested will not prove to be helpful as the final Amerindo account statements are incomplete and do not accurately reflect the amount of money that each investor is owed." (emphasis supplied) SECURITY AND EXCHANGE COMMISSION'S RESPONSE TO THE COURT'S FEBRUARY 7, 2012 ORDER Filed 2/21/12 in 05 Civ. 5321 (LTS) pg.2

"[I]n addition, even if the Government Entities were able to identify the last statement for each ATGF investor, there would be no way to verify the accuracy of the account statement. This is because, as the USAO explained in footnote 6 to their February 3, 2010 submission, former Amerindo London employees stated that Mr. Tanaka (a) calculated ATGF's net asset value by hand, with reference to certain stock market indices (rather than based on the fund's actual assets and liabilities, as would typically be the case); and (b) likely did not maintain a share register for ATGF." (emphasis supplied) SECURITY AND EXCHANGE COMMISSION'S RESPONSE TO THE COURT'S FEBRUARY 7, 2012 ORDER filed on 2/21/12 in 05 Cr. 621 (RJS) 05 Civ.5231 (LTS), pg.3

"[T]he Government is also unable to determine into which accounts particular investors' monies were placed into because, as part of their fraud, the Defendants failed to properly segregate their private investors' monies into separate accounts and (instead) commingled all the private investors monies without regard to the type of investment product or the terms of the investment vehicle. This issue is compounded by the fact that the defendants kept incomplete and inaccurate records of their clients and their clients' investments,"(emphasis supplied) USAO RESPONSE TO COURTS' FEBRUARY 7, 2012 ORDER filed on 2/21/12 in 05 cr. 621 (RJS) 05 Civ.5321 (LTS), Pg.2

"[A]s the Court will recall, the Defendants were convicted of a complex international fraud. As part of that fraud, to the Government's knowledge, the Defendants failed to keep any central registry or log of it's investors; they prepared drafts of client account statements by hand and hand-typed the statements that were mailed to investors•"(emphasis supplied) USAO RESPONSE TO COURTS' FEBRUARY 7, 2012 ORDER filed on 2/21/12 in 05 cr. 621 (RJS) 05 Civ. 5321 (LTS), Pg.4

"[T]he defendants have repeatedly acknowledged that monies obtained from GFRDA and ATGF investors were commingled and that all investors should be paid pro rata (regardless of the original form of the investment). The SEC staff agrees with this view and believes that it is the most equitable way to deal with a complicated and aged fraud involving extensive, but unreliable records" (Emphasis supplied) SECURITY AND EXCHANGE COMMISSION'S RESPONSE TO THE COURT'S FEBRUARY 7, 2012 ORDER filed on 2/21/12 in 05 Cr. 621 (RJS) 05 Civ. 5231 (LTS), Pg. 2

# EXHIBIT B

## THE MONIES BELONG TO THE AMERINDO INVESTORS

JUDGE SWAIN: "May I ask you this. As to the valuation of the illiquid assets or to the private investments, does your identification of the universe of investors or potential claimants also give you a solid enough sense of the amount of money owed to investors so that you could perhaps determine whether the liquid assets that are held would be sufficient for the distribution."

MS. LEVIN (Asst. US Attorney): "Well first of all it is investor money, so I'm not sure that any of it will actually- or none of it will actually go back to the defendants. These are all of the investor accounts." (Emphasis supplied) COURT TRANSCRIPT UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK. SECURITIES AND EXCHANGE COMMISSION, PLAINTIFF, v. AMERINDO INVESTMENT ADVISORS, INC., DEFENDANT. UNITED STATES OF AMERICA, PLAINTIFF, v. ALBERTO VILAR AND GARY TANAKA, DEFENDANT. BEFORE: HON LAURA TAYLOR SWAIN, DISTRICT JUDGE in 05 CV 5231 05 CR 621 January 10, 2012 Pg.12

MR JACOBSEN: "So, in our view, under any circumstance, the moneys that are in the accounts, investor accounts, should be going back to those investors, regardless of the ultimate outcome of whether the forfeiture order itself is vacated or reversed or reduced."(emphasis supplied) COURT TRANSCRPT UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK. SECURITIES AND EXCHANGE COMMISSION, PLAINTIFF, v, AMERINDO INVESTMENT ADVISORS, INC., DEFENDANT. UNITED STATES OF AMERICA, PLAINTIFF, v. ALBERTO VILAR AND GARY TANAKA, DEFENDANT.BEFORE: HON.LAURA TAYLOR SWAIN, DISTRICT JUDGE in 05 CV 5231 05 CR 621 January10, 2012 Pg. 19

As discussed by the Court in footnote 4 of its August 26, 2010 Memorandum and Order filed in the Criminal Case regarding the appropriate Forfeiture figure, the Court understood from representations made by counsel to Vilar and Tanaka at their sentencing hearing that "[t]he parties' dispute as to the exact size of the forfeiture award may be at least somewhat academic, insofar as Defendants concede that the assets subject to the restraining order should eventually benefit investors who are not included in the restitution order." (emphasis supplied) PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1 IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGEMENT AGAINST DEFENDANTS ALBERTO W. VILAR AND GARY ALAN TANAKA filed on 8/3/12 in 05 Civ. 5231 (RJS), Pgs. 12&13

"[A]s part of their scheme to defraud. Vilar and Tanaka opened brokerage accounts in the name of Panamanian entities controlled by Vilar and Tanaka; solicited funds by making false and misleading statements about the investments to investors, including false representations concerning the types of securities the funds would be invested in and the "guaranteed" rate of return that would be generated by the accounts; deposited monies received from investors as a result of their false and misleading representations into brokerage accounts opened by Vilar and Tanaka in the name of the Panamanian entities; misappropriated investor funds to be converted to the use of Vilar Tanaka and others; and used investor funds to repay Amerindo's obligations to other investors, rather than in a manner promised to the investors." (emphasis supplied) PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANF TO LOCAL CIVIL RULE 56. J IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGEMENT AGAINST DEFENDANTS ALBERTO W. VILAR AND GARY ALAN TANAKA filed on 8/3/12 in 05 Civ. 5231 (RJS), Pg. 6